TACIE IRENE CRUTHERS, INDIVIDUALLY AND AS EXECUTRIX UNDER THE LAST WILL AND TESTAMENT OF THOMAS CRUTHERS, DECEASED, PLAINTIFF-APPELLANT, v. AARON K. NEELD, DEPUTY DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued February 1, 1954—Decided March 1, 1954.

*Mr. Percy G. Britt* argued the cause for appellant.

*Mr. William A. Moore*, Deputy Attorney-General, argued the cause for respondent (*Mr. Theodore D. Parsons*, Attorney-General).

The opinion of the court was delivered by

WACHENFELD, J.  The appeal is from an assessment made by the Division of Taxation, Department of the Treasury of the State of New Jersey, of a transfer inheritance tax in the amount of $1,679, plus interest, levied against the plaintiff.  We certified the cause on our own motion.

The inquiry is directed toward three contracts issued by an insurance company, to determine whether the proceeds

thereof were properly included in the taxable estate of the decedent, plaintiff's husband, by reason of *R. S.* 54:34–1(*c*). That section of the statute imposes a tax where certain property is transferred "by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."

The record consists of a stipulation of facts, supplemented by a copy of one of the pertinent contracts, a related trust agreement, and findings of the inheritance tax examiner.

These papers reveal that Thomas Cruthers, the decedent, had been an executive of Worthington Pump and Machinery Corporation, which entered into a retirement plan and trust agreement dated May 1, 1943, with participating employees and the Fidelity Union Trust Company. In the Agreement the employer, Worthington, promised participating employees to make application to an insurance company for contracts for their benefit. The application was to be made through a retirement committee having the power to determine, "in its uncontrolled discretion, the form of the Contract * * * including who shall be the Beneficiaries and the mode of settlement," and its decision was "conclusive, final and binding" upon all parties to the agreement and upon all persons claiming rights thereunder, including beneficiaries.

In both the application and the contract itself the trustee was designated as sole owner of the contract, subject to the terms and provisions of the trust agreement. Its function was to administer the plan.

Article V of the trust agreement required the contract to contain an option of settlement providing for monthly payments to the participant during his lifetime after the date of his retirement, with a guarantee of 120 monthly payments to him. There was a further requirement that the contract provide for the payment of an amount equal to the unpaid guaranteed benefits to a designated beneficiary or beneficiaries in the event of the death of the participating employee prior to the expiration of ten years after his

retirement date. These provisions were termed the "standard option" of settlement.

In accordance with these and other directives of the trust agreement, Contract No. RA 1500257 of Massachusetts Mutual Life Insurance Company, the insurance company selected by the retirement committee, was issued on May 1, 1943, naming Thomas Cruthers, a participating employee, as the annuitant. This contract is identical with two others under consideration, issued at later dates, with respect to the applications, endorsements and undertakings by the Massachusetts Mutual Life Insurance Company for payment to the beneficiary if the annuitant should die prior to the date fixed for his retirement.

The policy provided Thomas Cruthers was to receive, upon the occasion of his retirement on May 1, 1953, an annuity consisting of a monthly retirement income of $402.50. Should he die before that date, which is what actually occurred here, then the insurance company was obligated to pay to the beneficiary, in one sum, "an amount equal to the cash surrender value hereunder at the date of the death of the annuitant or an amount equal to the total premiums paid for the contract * * * whichever is the greater." Tacie I. Cruthers, wife of the annuitant, was named as beneficiary.

The retirement plan and trust agreement did not guarantee employment until retirement, nor did it obligate the employer to pay any retirement income. It granted no cause of action to the participating employees. The employer completely and irrevocably surrendered all right ever to retake or seek refund of any contributions made by it toward the purchase of the contracts; and the rights of participants became non-forfeitable from the time contributions were paid.

The premiums on the three contracts under consideration were paid by the employer, always through the medium of the trustee. There was withheld from the decedent's salary prior to his death the amount of $7,973.70, which is said to represent his contribution toward the cost of the benefits provided by the retirement plan and trust agreement.

502

On July 27, 1952, about nine months prior to his scheduled retirement, Thomas Cruthers died testate, a resident of West Orange, New Jersey. At the time of his death he was still in the employ of Worthington, and the trust had not been revoked.

In addition to a net estate amounting to $40,593.99, his widow became entitled to $67,039.45 as beneficiary under the three contracts issued by the Massachusetts Mutual Life Insurance Company. Her husband's death before his retirement date obligated the insurance company to repay the total premiums paid for the contracts, and it is these proceeds which were taxed as transfers intended to take effect in possession or enjoyment at or after death.

The argument against taxability is based on an alleged absence of "property" or "interest" in the decedent with respect to the contracts. Plaintiff urges that inasmuch as the trustee was designated the owner of the policies, nothing passed to the main beneficiary from Cruthers at or after his death.

An attack is made also upon the tax examiner's finding that the decedent paid the entire cost of the annuity contracts, the contention being that the employer paid all the premiums to the trustee, which, in turn, paid them over to the insurance company, and thus the decedent had not even a beneficial or equitable, much less a legal, interest in the proceeds of the contracts.

These suggestions lay considerable stress upon the peculiar legal artistry devised and employed in the making of applications for contracts, the manner of paying premiums, and the way of administering and supervising the plan by the trustee. Whatever worth this reasoning has relates solely to the form of the arrangement made and ignores the substance with which we must concern ourselves.

Fanciful rationalism must give way to a realistic and analytical interpretation of the documents under scrutiny, and such treatment discloses the policies in question to be retirement annuity contracts. In this status it becomes unimportant what interest, equitable or otherwise, the dece-

dent had in the proceeds, for the tax is on the succession rather than on any divesting of the transferor's ownership. *In re Hollander's Estate*, 123 *N. J. Eq.* 52 (*Prerog.* 1938).

█ The ultimate objective of the plan—and indeed its operative effect—was to provide a stipulated return to the retired employee during his lifetime, with a disposition over upon his death of whatever might remain. The beneficiary therefore acquired an interest in the contracts which could only take effect in beneficial possession and enjoyment at or after the death of the decedent.

Nor does the decedent's demise prior to his retirement change the situation. There was a specific guarantee in the contract obligating the Massachusetts Mutual Life Insurance Company to pay over the entire proceeds of the policy to whomever the annuitant might designate, should he fail to live long enough to receive the amount due. Thus the rights of Tacie Irene Cruthers came into fruition only upon the death of her husband, when, by reason thereof, she became entitled to receive the balance due on the contracts which had theretofore been payable only to Thomas Cruthers.

█ The possibility of construing the policies as refund annuity contracts is admitted, but the plaintiff then seeks an exemption under the provisions of *R. S.* 54:34-4(f), providing the proceeds of any contract insuring the life of a decedent, paid to a beneficiary, are exempted from transfer inheritance taxation. The contracts, she urges, contained standard provisions required for life insurance policies, and she conceives the undertaking of the insurance company to be twofold: (1) to pay an annuity to the decedent; (2) to pay a death benefit to the designated beneficiary in the event of the death of the annuitant prior to his retirement date.

However, these are not two separate and distinct undertakings, existing at the same time, nor does each policy contain two contracts. The obligation of the insurance company was a single one, to wit, to repay the amount of capital paid to it, with certain adjustments. The possibility that this duty might extend to more than one person, by reason of the annuitant's designation of the beneficiary, does

not change the obligation to a twofold one. The provision for payment on death of the participating employee to one whom he shall designate does not of itself constitute the contract a life insurance agreement. Rather, it is simply a device for payment of whatever might remain of the annuitant's investment after his death.

Additionally, the recognized elements of a life insurance policy are conspicuously absent in the contracts under consideration, particularly the element of risk of loss. In a life insurance agreement the insurer loses in the event of the premature death of the insured, but the only risk encountered by the insurer in an annuity contract, except for the possibility that the annuitant may outlive his expectancy, is an investment risk that the capital may shrink in value or that the return may be less than the amounts payable to the annuitant.

The controlling adjudication is *Central Hanover Bank & Trust Co. v. Martin*, 129 *N. J. Eq.* 186 (*Prerog.* 1941), affirmed 127 *N. J. L.* 468 (*Sup. Ct.* 1942), affirmed 129 *N. J. L.* 127 (*E. & A.* 1942), affirmed *sub nom. Central Hanover Bank & Trust Co. v. Kelly*, 319 *U. S.* 94, 63 *S. Ct.* 945, 87 *L. Ed.* 1282 (1943). There the decedent paid a lump sum, called the capital investment, to the insurance company and received in consideration an agreement whereby the company bound itself to pay the annuitant certain fixed, equal, monthly payments during his life. If the annuitant were to die before receiving monthly payments aggregating the amount of the original capital investment, the company was bound to continue the monthly payments after his death until the total of those payments equalled the amount paid in. It was provided that the payments, if any, subsequent to the annuitant's death were to be made to his two sons, whom he designated as beneficiaries. Decedent also reserved the right during his lifetime to change the beneficiaries.

The transfers to the two sons were held to be taxable both as gifts *inter vivos* made in contemplation of death and also as gifts intended to take effect in possession or enjoyment at or after such death. It was found specifically that the

arrangement constituted a transfer by the decedent even though the insurance company made the payments to the sons. The court said:

"That which is to be paid by the company to the sons is in substance and effect simply that which the decedent has paid to the company and directed the company to pay to the sons. If otherwise taxable, these transfers are not saved from taxability because made through the medium of a third party. *In re Gemmell*, 123 *N. J. Eq.* 315. * * *

By the express terms of the contracts the sons take nothing thereunder until the death of the annuitant grantor; that which comes to them comes only at and after his death. It is a supererogation to say that these gifts were intended by decedent to take effect in possession or enjoyment at or after his death. He intended that which he expressly provided."

The distinction between a life insurance contract and a refund annuity contract is dwelt upon to some considerable extent and seemingly answers the very questions raised here. The vice-ordinary viewed a life insurance policy as a contract whereby the insurance company agrees to insure or indemnify the beneficiary against the death of the insured, as a contract by which the insured protects the beneficiary against loss accruing by the early or premature death of the insured, but under a refund annuity contract he conceived the obligation of the company as one

"to repay to the annuitant, in instalments during his life, the amount paid in by him to the company, and if at his death there be a balance unpaid to him, to pay that balance to the person designated by the annuitant to receive the same. It is a contract by which the annuitant protects *himself, during his life*, by making an investment which will assure the receipt *by himself*, of an adequate or desired annual sum during his life, with the further assurance that if he should die prematurely, his estate or those whom he desires to receive distribution thereof will not suffer the loss of the repayment he has himself not yet received. In the judgment of this court this is not a life insurance policy."

We are in accord with the views so expressed and find them applicable to the fact situation confronting us.

■ With respect to the contract designated RA 1500257, we are entirely satisfied it provided that in consideration of a capital investment of approximately $57,000 to be paid

to the Massachusetts Mutual Life Insurance Company over a period of ten years for the account of Thomas Cruthers, the insurance company obligated itself to pay a guaranteed minimum of 120 payments of $402.50, the payments to begin in 1953 and to be made to the annuitant if living or to his designated beneficiary. The guaranteed payments total $48,300 and constitute a repayment, plus interest but diminished by administration expenses, of the sum deposited with the insurance company over the ten-year period.

The plaintiff urges the difference in the above figures represents a loss sustained by the insurance company by reason of Cruthers' death prior to his intended retirement, thus supplying the *sine qua non* of life insurance.

The amount due under the contract varied to some degree, dependent on the time of the death of the deceased, but the difference did not represent a loss incurred by the insurance company; it was merely a savings to the plaintiff created by the cessation of the superintendency charged for by the insurance company. Under no circumstances was the company obligated to pay out more than it received, which is quite contrary to the risk usually assumed in a life insurance policy.

The fact that the capital investment was not made in a lump sum does not distinguish the case *sub judice* from the *Central Hanover* case, *supra*. In all other respects the facts are strikingly similar, including the provision for payment to the designated beneficiary.

The instruments in question, we think, are indisputably vehicles designed for the transmission of property in lieu of testamentary disposition, and the transfer accomplished by them is encompassed within the purview of *R. S.* 54:34-1(c), taxing such transactions effective at death.

The assessment appealed from is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.