IN RE ESTATE OF DOLBEER; BOWERS, TAX COMMR., APPELLEE, *v.* DOLBEER, APPELLANT.

(No. 599—Decided December 31, 1962.)

*Mr. Mark McElroy*, attorney general, and *Mr. John J. Dilenschneider,* for appellee.

*Messrs. McKee, Schwer, Hicks, Taggart & Wehler*, for appellant.

KERNS, J. This is an appeal on questions of law from a final order of the Probate Court of Clark County sustaining exceptions of the Tax Commissioner of Ohio to the determination of succession tax in the estate of Herbert D. Dolbeer.

Herbert Donald Dolbeer died testate on October 1, 1960,

while he was employed as General Manager of the Springfield Laundry Company. Item II of his last will and testament reads as follows:

"Item II—All the property, real and personal, of every kind and description, wheresoever situate, which I may own, or have the right to dispose of at the time of my decease, I give, bequeath and devise to my wife, Sue Katherine Dolbeer, absolutely and in fee simple."

The minutes of the Springfield Laundry Company disclose the following action taken on March 7, 1955:

"It was moved and seconded (R. Keith Dolbeer and Jack Dolbeer) that the present insurance policy of $25,000.00 on the life of H. D. Dolbeer be increased to $50,000.00 with the Company as the beneficiary, the Company to pay H. D. Dolbeer's heir or heirs $5,000.00 per year for ten years until a total of $50,000.00 is paid. Also, that the Company take out an additional policy of $25,000.00 on the life of H. D. Dolbeer with the Company as the beneficiary and the Company to retain this amount to cover any loss during the establishment of new management. Premium $1100.00 per year. Motion passed by unanimous vote."

On the same day, the following contract was entered into between the Springfield Laundry Company and Herbert Donald Dolbeer:

"This Agreement, entered into this 7th day of March, 1955, by and between the Springfield Laundry Company, a corporation organized and existing under the laws of the state of Ohio (hereinafter called the Company), party of the first part, and Herbert Donald Dolbeer, its General Manager (hereinafter called H. D. Dolbeer), party of the second part;

"Witnesseth:

"Whereas, H. D. Dolbeer has been employed by the Company as it's [sic] General Manager since September 15, 1937, and has managed the Company in a capable and efficient manner, resulting in substantial profits to the Company; and

"Whereas, the Company desires to retain the services of H. D. Dolbeer as general manager and realizes that if he were to enter into competition with the Company it would suffer financial loss; and

"Whereas, H. D. Dolbeer is willing to remain in the em-

ployment of the Company if the Company will agree to provide for his wife or other heirs or both, certain annual amounts, all in accordance with provisions and conditions set forth hereinafter;

"Now Therefore, in consideration of the premises and the covenants and agreements herein set forth and for other good and valuable considerations, receipt of which is hereby acknowledged, the parties hereto covenant and agree as follows:

"1—The Company agrees to increase the amount of insurance held in it's [sic] name on the life of H. D. Dolbeer, General Manager, to a total of Seventy Five Thousand Dollars ($75,-000.00) and to keep such insurance in force until such time as (1) his death occurs, or (2) both parties agree to amendment or annulment of this covenant.

"2—In event of the death of H. D. Dolbeer, the Company agrees to pay his beneficiary, Sue K. Dolbeer, or if she should not survive him, his son Richard Donald Dolbeer and daughter Mary Kathryn Daily, the total sum of Fifty Thousand Dollars ($50,000.00). The payments are to be made at the rate of Five Thousand Dollars ($5,000.00) per year payable on the first business day of each year, commencing with the first business day of the year after the year of his death and continuing for ten years until the total sum of Fifty Thousand Dollars has been paid.

"3—H. D. Dolbeer agrees that he will not directly or indirectly enter into or in any manner take part in any business, profession, or other endeavor either as an employee, agent or independent contractor, owner or otherwise, in the city of Springfield, Ohio or it's [sic] environs, which in the opinion of the directors of the Company shall be in competition with the business of the Company, which opinion of the directors shall be final and conclusive for the purpose hereof.

"4—H. D. Dolbeer agrees that if he shall fail to observe any of the covenants of Article 3 hereof and shall continue to breach any covenant therein contained for a period of thirty (30) days after the Company has requested him to desist, then any of the provisions hereof to the contrary, notwithstanding, H. D. Dolbeer agrees that the agreement becomes null and void and the Company shall have no further liability hereunder.

"5—The Company agrees that it will not merge or con-

solidate unless and until such corporation shall expressly assume the duties of the Company herein set forth.

"6—This agreement shall be binding upon the parties hereto, their heirs, executors, administrators or successors.

"7—This agreement shall be executed in duplicate, each copy of which when so executed and delivered shall be an original, but both copies shall, together, constitute one and the same instrument.

"In Witness Whereof, the said Springfield Laundry Company has caused this agreement to be signed in it's [sic] corporate name by it's [sic] President, and impressed with it's [sic] corporate seal, attested by it's [sic] Secretary and it's [sic] Treasurer, all as duly authorized by it's [sic] Directors and the said Herbert Donald Dolbeer has hereunto set his name and seal, all as of the same day and year first above written."

At the time of the agreement on March 7, 1955, the company held insurance policies on the life of Dolbeer in the amount of $45,000. On March 21, 1955, the company increased the amount to $50,000 in accordance with the terms of the agreement, and about three years later, the company further increased the amount of insurance on Herbert Dolbeer from $50,000 to $75,000.

The total amount of $75,000 was payable to the company as named beneficiary when Dolbeer died testate on October 1, 1960.

The appellee contends that the $50,000 payable to the decedent's widow pursuant to the agreement is a gift intended to take effect in possession or enjoyment at or after death and is therefore subject to Ohio succession tax. The appellant argues to the contrary. Both sides have presented respectable arguments in support of their respective positions, and the trial court has favored us with a comprehensive opinion covering the diverse arguments presented by the parties to the action.

Basically, the question presented is one of statutory construction.

Section 5731.02 of the Revised Code, so far as pertinent, provides:

"*A tax is hereby levied upon the succession to any property passing,* in trust or otherwise, to or for the use of a person, institution, or corporation, in the following cases:

"* * *

"(C) *When the succession is to property from a resident*, or to property within this state from a nonresident, *by deed, grant, sale, assignment, or gift*, made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property:

"* * *

"(2) Intended to take effect in possession or enjoyment at or after such death;" (Emphasis ours.)

Section 5731.01, Revised Code, defines certain words used in Section 5731.02, Revised Code, as follows:

"(A) *'Estate' and 'property' include everything capable of ownership, or any interest therein or income therefrom*, whether tangible or intangible, and, except as to real estate, whether within or without this state, *which passes to any one person*, institution, or corporation, *from any one person* whether by a single succession or not.

"(B) *'Succession' means the passing of property in possession or enjoyment, present or future.*" (Emphasis ours.)

In view of these statutory provisions, we have examined the contract between the decedent and the Springfield Laundry Company in an effort to find any property right, chose in action, annuity or retirement benefits, or anything else, tangible or intangible, which might be the subject of a succession *from the decedent* to his widow by deed, grant, sale, assignment or gift. The effort has been in vain. The contract gives no "property" to the decedent within the meaning of that term as defined in Section 5731.01, Revised Code. He did not receive and could not acquire anything capable of ownership therefrom. At the most, the consideration flowing to the decedent by virtue of the contract was the naked power to name a beneficiary of property in which, by the terms of the contract, he had no possessive right—legal or equitable—present or future.

It is well settled that the Ohio succession tax is not a tax upon property, but is a tax upon the succession or the right and privilege to receive property. *In re Estate of Chadwick*, 167 Ohio St., 373. However, this maxim cannot be construed as an inexorable command to tax all property received, regardless of its source, and regardless of the statutory language which initially gives rise to the tax.

Here, the property received by the widow comes directly and exclusively from the company in response to a contract for valuable consideration. Property so received is clearly not within the terms of the taxing statutes now under consideration, and the rule is well established that statutes imposing tax may not be enlarged by implication so as to embrace subjects of taxation not specifically included therein. *Cassidy* v. *Ellerhorst*, 110 Ohio St., 535. Taxing statutes must be construed strictly against the state and liberally toward the taxpayer. *Akron Transportation Co.* v. *Glander, Tax Commr.*, 155 Ohio St., 471.

Interestingly, the taxing authority for many years apparently shared the view that "property" such as that now in question was not taxable. It undoubtedly has been noticed that the contract before us has all the earmarks of an ordinary insurance policy, and the proceeds of insurance policies were not specifically exempted from succession tax until what is now Section 5731.06, Revised Code, was enacted in 1931. Nevertheless, prior to the enactment of this statute the proceeds of life insurance, where paid to a named beneficiary, were not subjected to the payment of succession tax in Ohio. See *In re Estate of Rothenbuecher*, 76 Ohio App., 425, 428. In 2 Opinions of Attorney General (1919), 1142, No. 638, the reasons for excluding insurance proceeds from inheritance tax were set forth as follows:

"The succession must take place as to property which passes from a person to the successor by a stipulated mode. This is not the case with a life insurance policy payable to a beneficiary. The assured does not give, grant, assign or sell any part of his property to the beneficiary. He makes a contract with the insurance company whereby in the event of his death, the insurance company agrees to pay to the beneficiary. The assured never had the right of action which the beneficiary has upon the happening of his death, and therefore that right of action does not pass from the decedent to the beneficiary, either at death or at any other time. In fact, the only thing which passes to the beneficiary is a thing which has no existence until the death occurs."

Based upon these reasons for excluding insurance contracts from the operation of Section 5731.02, Revised Code, and in the absence of the exemption statute, could anyone seriously ques-

tion that the contract now under consideration would likewise have been excluded from taxation prior to 1931? What then has transpired since to change the law? The taxing statute has not been amended to include this type contract. And surely, the Legislature, by enacting Section 5731.06, Revised Code, did not intend thereby to enlarge the area of taxation already provided by Section 5731.02, Revised Code. As a matter of fact, the rule of nonliability which followed insurance contracts prior to 1931 applies with equal force to similar contracts today and for the same reasons: (1) The proceeds are not transferred by deed, grant, sale, assignment or gift and (2) the proceeds are not and never were the property of the decedent. But the appellee argues that the contract cannot be treated in the same manner as an insurance policy because the contracting company is not authorized by law to write insurance. This argument appears to be more in the nature of an excuse for taxation than a reason for it. Admittedly, the contract here is not an insurance contract. Nevertheless, it has all the legal attributes of an insurance contract, and if the language of Section 5731.02 is not broad enough to include insurance contracts (as indicated in Section 5731.06, Revised Code), it follows inescapably that the same language is not broad enough to include the contract before us.

The appellee apparently relies heavily upon the case of *In re Estate of Daniel*, 159 Ohio St., 109, to sustain his position. That case, however, is readily distinguishable on its facts from the present case. There, the decedent had a "vested property right in the trust fund" which passed to his designated beneficiary. Here, the decedent had nothing capable of ownership. In fact, it is significant that a major portion of the opinion in the *Daniel case* was devoted to a disclosure of the fund or property which was in the possession of the decedent and subject to disposition. Obviously, this portion of the opinion was superfluous if "ownership" of some property interest by the decedent was not a prerequisite to the imposition of inheritance tax. Furthermore, a literal application of the language of the first two paragraphs of the syllabus of the *Daniel case* to the facts of the present case decidedly supports the position of the appellant herein.

524

The judgment is reversed and final judgment entered for the appellant.

*Judgment reversed.*

CRAWFORD, P. J., and SHERER, J., concur.