IN THE MATTER OF THE ESTATE OF LUTHER M. BANNON, VIOLET F. BANNON, CO-EXECUTOR AND CO-TRUSTEE, MERLE CALVERT, CO-EXECUTOR AND CO-TRUSTEE.

[No. 2-775A166. Filed December 29, 1976. Rehearing denied February 7, 1977. Transfer denied May 11, 1977.]

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellant.

*Richard L. Gilliom, Stewart, Irwin, Gilliom, Fuller & Meyer,* of Indianapolis, for appellee.

LYBROOK, J.—The Inheritance Tax Division of the Department of Revenue (State) appeals the judgment of the Marion Probate Court that Violet F. Bannon was not required to pay any state inheritance tax on money she received following the death of her husband. We affirm.

The payment in question arose from a contract of employment, executed on June 26, 1969, between decedent Luther M. Bannon and Ra Dis Co., Inc. The provision which provided for the payment to Bannon's widow reads in part as follows:

\* \* \*

"Bannon accepts employment with the Corporation for a period of ten (10) years, at a salary of Twenty Thousand Dollars ($20,000.00) per annum for five (5) years, beginning June 1, 1969, and for a salary of Ten Thousand Dollars ($10,000.00) per annum for a period of five (5) years beginning June 1, 1974. If Bannon should die before the end of the ten (10) year period described above, then, if his wife should survive him, Corporation agrees to pay to her Five thousand Dollars ($5,000.00) per annum for the years remaining in said ten (10) year term but in no event to continue beyond her death."

Until his death on June 25, 1972, Bannon remained with the corporation in an advisory capacity. Pursuant to the terms of the agreement, an annuity totalling $34,600 thus became payable to his widow for the remainder of the ten year period.

The probate court ruled on the attendant tax consequences in response to the State's Petition for Rehearing, Reappraisement and Redetermination of Inheritance and Transfer Tax

and the estate's Motion for Partial Summary Judgment. The court concluded in part:

\* \* \*

"1. The annuity from Ra-Dis-Co., Inc. in the amount of Thirty-four Thousand Six Hundred Dollars ($34,600) is non-taxable for the reason that there was no transfer of a property interest from decedent on payment or the obligation of payment of said annuity from Ra-Dis-Co., Inc. to decedent's widow."

\* \* \*

From this judgment, the State appeals.

The inheritance tax statute in effect at the time of decedent's death, IC 1971, 6-4-1-1 (Burns Code Ed.), reads in pertinent part as follows:

"A tax is hereby imposed, under the conditions and subject to the exemptions and limitations hereinafter described, upon all transfers, in trust or otherwise, of the following property, or any interest therein or income therefrom:

"When the transfer is from a resident of this state, of real property situated in this state, or of any tangible personal property except such as has an actual situs without this state, or of any and all intangible personal property wherever situated.

\* \* \*

"All transfers enumerated in this section shall be taxable . . . if made by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor . . ."

"Transfer" is defined by IC 1971, 6-4-1-32 (Burns Code Ed.) to include "the passing of property or any interest therein in possession or enjoyment, present or future by inheritance, descent, devise, bequest, grant, bargain, sale or gift, in the manner herein described or the exercise of the right of survivorship in cases of joint ownership."

In determining whether the present transfer is taxable under this statute, we are guided by a number of cases from

other jurisdictions which have dealt with related problems.[2] The cases are divided according to two distinct theories of taxation.[3] Under the "receipt" or "succession" theory, the taxable event is an enlargement of the beneficiary's interest at the transferor's death, regardless of whether the transferor retained an interest in the property during his lifetime. In contrast, under the "ownership" or "divestment" theory, property passing to a transferee at decedent's death will escape taxation if the decedent had no interest in it at his death.

The estate urges us to align our statute with the "ownership" theory and to require, as prerequisites to taxation, (1) a transfer from decedent (2) of an interest in property which the decedent owned at death. As authority for its contention that this transfer fails to meet either requirement, the estate cites cases from "ownership" jurisdictions.[4] The State, on the other hand, relies upon cases from "receipt" jurisdictions to support the imposition of tax.[5]

We are of the opinion that our statute, on the whole, utilizes

2. See Annot., 73 ALR.2d 157. We are unable to find, nor do the parties cite, any Indiana cases which deal directly with this issue. The State refers us to *Indiana Department of State Revenue, Inheritance Tax Division* v. *Mertz* (1940), 119 Ind. App. 601, 88 N.E.2d 917, which is clearly distinguishable. The decedent there made a conveyance of real estate to his sons in which he expressly reserved a life estate. On the contrary, the employment contract under consideration here provides for periodic salary payments to be made over a term of years.
3. See D. R. Brink, Minnesota Inheritance Tax: Some Problems and Solutions, 43 Minn. L. Rev. 443 (1959); R. Meisenholder, Taxation of Annuity Contracts Under Estate and Inheritance Taxes, 39 Mich. L. Rev. 856 (1941).
4. *In re Estate of Shade* (Probate Ct. Ohio, 1966), 38 Ohio Ops.2d 357, 224 N.E.2d 401; *In re Estate of Kramer* (Probate Ct. Ohio, 1964), 30 Ohio Ops.2d 370, 203 N.E.2d 271; *In re Estate of Dolbeer* (1962), 117 Ohio App. 517, 193 N.E.2d 174; *Enbody and Burke Estates* (1953), 85 Pa. Dist. & Co. R. 49.
5. *Narva* v. *Commissioner of Corporations and Taxation* (1971), Mass., 266 N.E.2d 638; *National Shawmut Bank of Boston* v. *Commissioner of Corporations and Taxation* (1968), 354 Mass. 350, 237 N.E.2d 290; *Gould* v. *Johnson* (1960), 156 Me. 446, 166 A.2d 481; *Dolak* v. *Sullivan* (1958), 145 Conn. 497, 144 A.2d 312; *Borchard* v. *Connelly* (1953), 140 Conn. 491, 101 A.2d 497; *Cruthers* v. *Neeld* (1954), 14 N.J. 497, 103 A.2d 153.

the "ownership" theory. In each of the transfers specifically enumerated by the statute the decedent retained some control over the property. *See State Department of Revenue, Inheritance Tax Division* v. *Estate of Powell* (1975), 165 Ind. App. 482, 333 N.E.2d 92. Furthermore, the "ownership" test reflects a basic distinction which underlies our inheritance tax system. The inheritance tax is directed toward transfers of property by will, by intestate succession, and by other such transfers that substitute for testamentary depositions. The death tax is not intended to apply to absolute *inter vivos* gifts. *Armstrong* v. *State ex rel. Klaus* (1919), 72 Ind. App. 303, 120 N.E. 717. The only meaningful distinction between an *inter vivos* gift and a testamentary gift is that in the latter the transferor enjoys the property throughout his life. See Note, The "Transfer Intended" Clause in Indiana Inheritance Tax, 35 Ind. L.J. 519 (1960).

The decisive question, then, is *whether the decedent had an interest in the property which passed to the beneficiary upon his death.* In the case at bar the salary payable to decedent for his services must be distinguished from the annuity payable to his widow upon his death. The right to receive salary payments while alive during the ten year period was the only property right which decedent possessed under the agreement and that right ceased with his death. The decedent had no interest in the annuity which was payable to his widow. The payment was not a transfer from decedent, rather, it came directly from the corporation in response to a contract for valuable consideration. See *In re Estate of Dolbeer* (1962), 117 Ohio App. 517, 193 N.E.2d 174; *In re Estate of Kramer* (Probate Ct. Ohio 1964), 30 Ohio Ops.2d 370, 203 N.E.2d 271.

Even if we accept the State's characterization of this arrangement as one involving deferred compensation, we are not persuaded that this fact, standing alone, qualifies as a suffi-

cient property interest under the "ownership" test.[6] The only reported case from an "ownership" state to consider this question is *Cameron Estate* (1958), 15 Pa. Dist. & Co. R.2d 557. The corporation there entered into a contract with its employee to pay a deferred compensation of $50,000 over a period of ten years beginning upon his retirement; the payments were to be made to his widow if he died before that amount was exhausted. A majority concluded that the payments were subject to taxation, since the widow's rights under the contract could have been assigned by the employee prior to his death.

Our view of the contract rights in the case at bar, however, leads us to a contrary result. The employment agreement here, contra to *Cameron, did not give decedent the power to change the beneficiary.* Under general contract law, any change in the agreement could only be made with the consent of the other signatory to it. Moreover, there is the question of whether the widow was a third party donee-beneficiary of the agreement whose rights were vested and who could not have been prejudiced by the parties to the agreement without her consent.[7] Decedent thus relinquished his interest in the amount payable to his widow once he entered into the agreement because he could not thereafter take any unilateral action to affect her rights.

The judgment is therefore affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 358 N.E.2d 215.

---

6. The State cites a number of cases which have imposed an inheritance tax on arrangements similar to the one presented here. See note 5, *supra.* Because these cases come from "receipt" jurisdictions, they are not authority for what has been held taxable under the "ownership" theory. See *In re Estate of Patterson* (Probate Ct. Ohio, 1962), 184 N.E.2d 562.

7. The right to modify a third party beneficiary contract, without the assent of the beneficiary, ceases once the contract is accepted, adopted or acted upon by the third person. *In re Estate of Fanning* (1975), 263 Ind. 414, 333 N.E.2d 80.