INDIANA DEPARTMENT OF STATE
REVENUE, INHERITANCE TAX
DIVISION, Appellant,

v.

ESTATE OF Doris K. PARKER,
Deceased, Appellee.

No. 49T10–0812–TA–72.

Tax Court of Indiana.

March 24, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Kristen M. Kemp, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

David P. Murphy, David P. Murphy & Associates, P.C., Greenfield, IN, Attorney for Appellee.

FISHER, J.

The Indiana Department of State Revenue, Inheritance Tax Division (Department) appeals the Hendricks Superior Court 1's (probate court) order determining the Indiana inheritance tax liability of the Estate of Doris K. Parker (Estate). The issues before the Court are:

I. Whether the probate court erred in determining that Indiana Code § 6- 4.1–4–1 did not require the Estate to file an appraisal with its inheritance tax return;

and

II. Whether the probate court erred in determining that the real property was to be valued under Indiana Code § 6–4.1–6–1.

### FACTS AND PROCEDURAL HISTORY

On May 9, 1983, Doris K. Parker (Doris) and her husband, Roy E. Parker (Roy), executed four warranty deeds conveying the family farm to their children, Willa Dean Yeager (Willa Dean) and Willis G. Parker (Willis), and reserving life estates to themselves. (*See* Appellant's App. Exs. P–S.) The warranty deeds were recorded in the Hendricks County Recorder's Office on May 13, 1983. At that time, Willa Dean and her family were living on the family farm with her parents.

On January 5, 1984, Roy died. On December 22, 2006, Doris died intestate, at the age of ninety-four. Doris was survived by both of her children.

On September 12, 2007, the Estate filed an "Indiana Inheritance Tax Return," reporting, among other things, that the total fair market value of the family farm was $1,230,950. (*See* Appellant's App. Ex. E at 7.) In computing that value, the Estate deducted $68,000 in improvements that Willa Dean had made to the property both before and after the execution of the warranty deeds. (*See* Appellant's App. Ex. E at 7.) The return also reported that the fair market value of Doris's life estates totaled $307,737.50; that total was used to compute Willis and Willa Dean's inheritance tax liabilities. No formal appraisal was attached to the return.

That same day, the Hendricks County Inheritance Tax Appraiser issued its "Re-

port of Appraiser" which provided that the information in the return was correct. (*See* Appellant's App. Ex. D.) On September 21, 2007, the probate court entered its "Order Determining Inheritance Tax Due" in the amount of $3,112.59.

On January 18, 2008, the Department filed a "Petition for Rehearing and Redetermination of Inheritance Tax" (Petition) with the probate court. In its Petition, the Department asserted that because the Estate had made several errors in computing Willis and Willa Dean's inheritance tax liabilities and failed to include an appraisal with its return, the Department could not determine the amount of inheritance tax in controversy.

The probate court held a hearing on the Department's Petition on August 11, 2008. At the hearing, the Department informed the probate court that there were only two issues: first, whether Indiana Code § 6–4.1–4–1 and 45 IAC 4.1–4–3 required the Estate to file an appraisal with its inheritance tax return (hereinafter, "the appraisal issue"); and second, whether Indiana Code § 6–4.1–2–4 and 45 IAC 4.1–2–7 required Willis and Willa Dean's inheritance tax liabilities to be based on the fair market value of the family farm, not merely the fair market value of Doris's life estates (hereinafter, "the valuation issue"). (*See* Appellant's App. Ex. C at 1–2.)

On September 18, 2008, the probate court issued its "Findings of Fact, Conclusions of Law and Judgment" (order). In the order, the probate court held that no formal appraisal was required under Indiana Code § 6–4.1–4–1; rather, the statute only required that the Estate "submit [its] determination of the 'fair market value' of th[e] assets." (Appellant's App. Ex. B ¶¶ 10, 11.) In addition, the probate court held that Willis and Willa Dean's inheritance tax liabilities were to be based on the fair market value of Doris's life

estates because they "received less than a fee interest upon the death of their mother[.]" (Appellant's App. Ex. B ¶¶ 18–20.)

On October 3, 2008, the Department filed a "Motion to Correct Error" (motion). The Estate filed its response thereto on October 21, 2008. The probate court denied the Department's motion without making any additional findings on October 30, 2008.

The Department filed an appeal with this Court on November 12, 2008. The Court heard the parties' oral arguments on July 13, 2009. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The Indiana Tax Court acts as a true appellate tribunal when reviewing an appeal of a probate court's determination concerning the amount of Indiana inheritance tax due. IND.CODE ANN. § 6–4.1–7–7 (West 2010). *See also In re Estate of Young,* 851 N.E.2d 393, 395 (Ind. Tax Ct.2006) (citation omitted). Accordingly, while the Court will afford the probate court great deference in its role as the finder of fact, it will review the probate court's legal conclusions *de novo. Id.* (footnote omitted).

## DISCUSSION

### I. The necessity of an appraisal under Indiana Code § 6–4.1–4–1

The Department asserts that the probate court's resolution of the appraisal issue must be reversed because the Estate's inheritance tax return does not comport with the requirements of Indiana Code § 6–4.1–4–1. More specifically, the Department maintains that Indiana Code § 6–4.1–4–1, as clarified by 45 IAC 4.1–4–3, required the Estate to obtain an appraisal that was prepared by a licensed appraiser and then file the appraisal with

its inheritance tax return. (*See* Appellant's Br. at 13–15.)

■ When this Court is confronted with a question of statutory construction, its function is to determine and give effect to the legislature's intent in enacting the statutory provision in dispute. *RDI/Caesars Riverboat Casino, LLC v. Ind. Dep't of State Revenue*, 854 N.E.2d 957, 963 (Ind. Tax Ct.2006) (citations omitted), *review denied.* In general, the best evidence of this intent is found in the actual language chosen by the legislature. *Id.* (citation omitted). As such, words and phrases will be taken in their plain, ordinary and usual sense, unless such a construction is plainly repugnant to the intent of the legislature or the context of the statute. *Id.* (citation omitted). *See also* IND.CODE ANN. § 1–1–4–1(1) (West 2006). " 'When the language of a statute is plain and unambiguous, the [C]ourt has no power to construe the statute for the purpose of limiting or extending its operation.' " *In re Estate of Wilson*, 822 N.E.2d 292, 295 (Ind. Tax Ct.2005) (citation omitted).

■ Indiana Code § 6–4.1–4–1, in its entirety, provides:

(a) Except as otherwise provided in section 0.5 of this chapter or in IC 6–4.1–5–8, the personal representative of a resident decedent's estate or the ... transferee of property transferred by the decedent shall file an inheritance tax return with the appropriate probate court within nine (9) months after the date of the decedent's death. The person filing the return shall file it under oath on the forms prescribed by the [Department]. The return shall:

(1) contain a statement of all property interests transferred by the decedent under taxable transfers;

(2) indicate the fair market value, as of the appraisal date prescribed by IC 6–4.1–5–1.5, of each property interest included in the statement;

(3) contain an itemized list of all inheritance tax deductions claimed with respect to property interests included in the statement;

(4) contain a list which indicates the name and address of each transferee of the property interests included in the statement and which indicates the total value of the property interests transferred to each transferee; and

(5) contain the name and address of the attorney for the personal representative or for the person filing the return.

(b) If the decedent died testate, the person filing the return shall attach a copy of the decedent's will to the return.

IND.CODE ANN. § 6–4.1–4–1 (West 2006). This statute, by its own terms, does not require the Estate to obtain an appraisal valuing its assets at their fair market value nor does it require the Estate to file such an appraisal with its inheritance tax return.

Nevertheless, the Department explains that in interpreting the statute, it promulgated 45 IAC 4.1–4–3, which requires "a formal appraisal by a licensed appraiser." *See infra* pp. 234–35. The Department argues that its regulation should be afforded "the force of law" because it clarifies the statutory requirements (but neither adds to those requirements nor extends the Department's powers). (*See* Appellant's Br. at 14; Oral Argument Tr. at 6–7.) According to the Department, its regulation simply "ensures [that] the [E]state's statutorily-required submission of fair market values is substantiated." (Ap-

pellant's Reply Br. at 2.) The Court, however, must disagree.

"This Court has often stated that what a statute does not say is just as important as what it does say." *Haas Publ'g Co. v. Ind. Dep't of State Revenue*, 835 N.E.2d 235, 238 (Ind. Tax Ct.2005) (citation omitted), *review denied.* If the legislature had intended for the Estate to substantiate its own opinion as to the fair market value of its assets by attaching an appraisal to its return, it would have stated as much. Instead, the legislature only required the Estate to *"indicate"* the fair market value of its property as of the *"appraisal date* prescribed by IC 6–4.1–5–1.5[.]" *See* A.I.C. § 6–4.1–4–1(a)(2) (emphasis added). The plain and ordinary meaning of the word "indicate" is "to point out or point to or toward with more or less exactness[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 1150 (2002 ed.). *See also Johnson County Farm Bureau Coop. Ass'n v. Ind. Dep't of State Revenue*, 568 N.E.2d 578, 581 (Ind. Tax Ct.1991) (stating that non-technical, undefined words in a statute are to be given their ordinary and accepted dictionary meanings) (citations omitted), *aff'd*, 585 N.E.2d 1336 (Ind.1992). In turn, Indiana Code § 6–4.1–5–1.5 defines "appraisal date" as either the date of the decedent's death or the date used to value the property interest for federal estate tax purposes. *See* IND.CODE ANN. § 6–4.1–5–1.5(a) (West 2006). Therefore, Indiana Code § 6–4.1–4–1 does not require that the fair market value of the Estate's assets be provided in the form of an appraisal; rather, it only requires that the Estate determine what the fair market value of its assets are as of the appraisal date and record that determination on its inheritance tax return.

Furthermore, contrary to the Department's claim, 45 IAC 4.1–4–3 does not require an estate to obtain and then sub-

mit an appraisal with its inheritance tax return in order to substantiate the fair market of its assets. The regulation provides:

(a) The following documentation shall be attached to the inheritance tax return:

(1) A copy of the decedent's last will and testament.

(2) A copy of any trust instrument under which a property interest is transferred due to the death of the decedent.

(3) A copy of any antenuptial or postnuptial agreement under which a property interest is controlled at the death of one (1) of the parties.

(4) A copy of any divorce decree controlling the ownership of property and which has an effect upon the transfer of that property in the decedent's estate.

(5) Form 712 of the Internal Revenue Service, or a similar type form, properly prepared by the insurance company for all proceeds paid due to the death of the decedent.

(6) A formal appraisal, by a licensed appraiser, setting forth the fair market value of all tangible property reported on the return. All such appraisals obtained shall be attached to the return.

(7) The deed for real estate held other than in the decedent's name alone, and the deed for real estate in which the decedent is the grantor.

(8) Statements of net earnings or operating results and balance sheets for each of the five (5) full years immediately preceding the valuation date for the following property when included in the taxable estate:

(A) Shares of a corporation which are not publicly traded.

(B) An interest in a partnership.

(C) An interest in an unincorporated business.

(b) All other documentation, such as a consent to transfer, a buy-sell agreement, or a claim verification, necessary to clarify a given situation shall be submitted to the [D]epartment when requested.

45 IND.ADMIN. CODE 4.1–4–3 (2006) (*see* http://www.in.gov/legislative/iac/). Thus, the Department's regulation requires that the enumerated documents (*e.g.*, an appraisal, a divorce decree, or an antenuptial agreement) be attached to an inheritance tax return *only if they exist*, as the existence of each of the documents is not guaranteed. *See Will's Far–Go Coach Sales v. Nusbaum*, 847 N.E.2d 1074, 1078 (Ind. Tax Ct.2006) (stating that this Court applies the same rules of construction to both statutes and administrative rules) (citations omitted). Therefore, the use of the word "shall" in the regulation should be understood to have directive force only in those instances where the documents exist. Accordingly, the probate court did not err when it held that Indiana Code § 6–4.1–4–1 did not require the Estate to file an appraisal with its inheritance tax return.[1]

## II. The valuation of the family farm under Indiana Code § 6–4.1–6–1[2]

■ The Department also asserts that the probate court erred in holding that

---

**1.** As an aside, the Department's arguments as to the appraisal issue primarily concern the reliability of the Estate's opinion of value as to the family farm. For example, the Department cautions that affirming the probate court's disposition of this issue will foster an "environment for erroneous appraisals" because estates "will essentially be able to set [their] own value[s] for [ ] property." (*See* Appellant's Br. at 15.) The Department argues that "[t]he requirement of a licensed appraisal [simply] places the burden on the estate to substantiate the fair market value [of the assets] and allows the Department to rely on an expert in the industry." (Appellant's Reply Br. at 4.) The Department's arguments, however, are not only jaded, but are misplaced as well.

First, the Indiana Supreme Court explained more than fifty years ago that the probate court ultimately determines the fair market value of an estate's assets; not the estate. *See Indiana Dep't of Revenue, Inheritance Tax Div. v. Callaway's Estate*, 232 Ind. 1, 110 N.E.2d 903, 905–07 (1953). *See also* IND.CODE ANN. § 6–4.1–12–1 (West 2010) (stating a county probate court "has jurisdiction to determine the inheritance tax imposed as a result of [a] resident decedent's death and to hear all matters related to the tax determination"). Second, the Department completely discounts the fact that inheritance tax returns must be filed under oath. *See* IND.CODE ANN. § 6–4.1–4–1(a) (West 2010). Finally, the Department ignores the independent role of the County Inheritance Tax Appraiser ("the CITA"), the statuto-rily designated expert, who assists the probate court by, *inter alia*, "apprais[ing] each property interest, transferred by the decedent under a taxable transfer, at its fair market value as of the appraisal date[.]" IND.CODE ANN. § 6–4.1–5–2 (West 2010) (emphasis added). While the practices of the CITA may vary from county to county, its statutorily imposed duties are constant: to assist the probate court by investigating and reviewing inheritance tax returns and appraising each property interest transferred therein. *See id.* To that end, and in accordance with the adversarial nature of the proceedings, either party may seek a reappraisal if it believes that the "appraisal [or evaluations] approved by [the] probate court with respect to a resident decedent's estate" is incorrect. *See* IND.CODE ANN § 6–4.1–7–2 (West 2010). To the extent the Department believes the CITA is not an expert or that it needs its own expert, it may lobby the legislature to so provide in its statutes.

**2.** Indiana Code § 6–4.1–6–1, in part, provides:

For purposes of this article, county inheritance tax appraisers and the [Department] shall, if possible, appraise each future, contingent, defeasible, or life interest in property and each annuity by using the rules, methods, standards of mortality, and actuarial tables used by the Internal Revenue Service on October 1, 1988, for federal estate tax purposes.

IND CODE ANN. § 6–4.1–6–1(a) (West 2010).

only the value of the life estates were subject to inheritance tax. According to the Department, the entire fair market value of the family farm, as valued in accordance with Indiana Code § 6–4.1–2–4, was subject to the tax because that was what Doris transferred to her children when she died. (*See* Appellant's Br. at 6–10.) The Department is correct.

■ Indiana's inheritance tax statutes impose, at the time of the decedent's death, a tax on the privilege of succeeding to certain property rights of deceased persons. *See* IND.CODE ANN. § 6–4.1–2–1 (West 2010); *Estate of Young*, 851 N.E.2d at 395. Specifically, the inheritance tax applies to "transfers which are made in such a manner that they are intended to take effect in possession or enjoyment at or after the transferor's death[.]" IND. CODE ANN. § 6–4.1–2–4(a)(3) (West 2010). The tax, however, is not imposed on the property itself, but rather on the transfer of ownership of either the legal or beneficial interest in the property. *Estate of Young*, 851 N.E.2d at 395 n. 4.

In 1984, the Court of Appeals analyzed the applicability of Indiana Code § 6–4.1–2–4 to facts that essentially mirror the facts of this case.[3] *See Indiana Dep't of State Revenue, Inheritance Tax Div. v. Estate of Smith* (*Smith I* ), 460 N.E.2d 980 (Ind.Ct.App.1984), *aff'd in part*, 473 N.E.2d 611 (Ind.1985) (footnote added). In *Smith I*, a "husband and wife[ ] conveyed, without consideration, [ ] a sixty-seven acre tract which they owned as tenants by the entireties, to their three sons and their wives (transferees)." *Id.* at 981.

The husband and wife "each reserved joint and successive life estates in the [ ] property." *Id.* The husband predeceased the wife; one-half of the value of the sixty-seven acre tract was included in both his gross estate and the probate court's order determining inheritance tax due. *Id.* The transferees paid the tax. *Id.* When the wife died, the other half of the sixty-seven acre tract was included in her gross estate. *Id.* at 982. The Department maintained that the full value of the sixty-seven acre tract should have been included in the wife's gross estate and subjected to inheritance tax. *Id.* Thus, the issue was:

> Whether real estate that is held by a husband and wife as tenants by the entireties and which is gratuitously transferred subject to their joint and successive life estates is taxed in the estate of the last grantor to die or is taxed one-half in the estate of the first to die and one-half in the estate of the second to die.

*Id.*

The Court of Appeals held that the entire value of the sixty-seven tract was to be taxed in the wife's estate (i.e., the estate of the last grantor to die). *Id.* at 984. In so holding, the Court of Appeals explained that the couple's reservation of life estates signaled that, for inheritance tax purposes, the transfers were intended to " 'take effect in possession or enjoyment at or after the transferor's death.' " *Id.* at 983 (quoting A.I.C. § 6–4.1–2–4). The Court of Appeals further explained that after the husband's death, the wife continued to enjoy a

---

3. The Estate, on the other hand, claims that another case which expressly declined to follow "the ancestor" of *Smith I* is more applicable. (*See* Appellee's Br. at 9–12 (citing *In re Estate of Bannon*, 171˙ Ind.App. 610, 358 N.E.2d 215, 216 n. 2 (1976)) (which provided that "the ancestor" of *Smith I* was distinguishable because it involved the conveyance of real estate with the reservation of a life estate and not an employment contract that provided for periodic salary payments).) Nonetheless, this Court finds the logic employed in *Smith I* to be more instructive and persuasive, as this case involves the conveyance of real estate and not an employment contract.

present possessory interest as a life tenant in the property. *Id.* Consequently, the transferees took possession of the whole property, which was then subject to tax, when the wife died. *Id.* at 984. The Indiana Supreme Court subsequently affirmed the Court of Appeals as to this issue. *See Indiana Dep't of State Revenue, Inheritance Tax Div. v. Estate of Smith* (*Smith II*), 473 N.E.2d 611, 614 (Ind.1985).

Here, just as in *Smith I*, a husband and wife conveyed real property to their children, reserving life estates to themselves. That the warranty deeds did not indicate whether Roy and Doris owned the family farm as tenants by the entireties does not alter the manner in which the real estate is to be valued for inheritance tax purposes. *See Smith I*, 460 N.E.2d at 984 (reiterating that "property held in a tenancy by the entireties is held *by a single legal entity created by the fiction of the unity of husband and wife*" (emphasis added) (citations omitted)). Similarly, the fact that the inter vivos transfers of Willis and Willa Dean's remainder interests took effect in 1983 has no bearing on their inheritance tax liabilities. *See* 45 IND.ADMIN. CODE 4.1–2–7 (2006) (*see* http://www.in.gov/legislative/iac/) (imposing the tax at the time the transferees come into possession of the property, not at the time the property *vests* in the transferees). *Accord Smith II*, 473 N.E.2d at 614 n. 1 (recognizing that an inter vivos transfer may take effect before the inheritance tax accrues). Indeed, it is indisputable that Doris, as the last life tenant to die, retained a present possessory interest in the family farm until her death. *See Smith II*, 473 N.E.2d at 612–14. *See also, e.g., In re Estate of Grotrian*, 405 N.E.2d 69 (Ind.Ct.App. 1980). When Doris died, her interests in the family farm were extinguished; as a result, her children took possession of the whole property at that time. *See id.* at 72.

Accordingly, the entire fair market value of the family farm, as ascertained under Indiana Code § 6–4.1–2–4, was subject to Indiana inheritance tax, not just the fair market value of Doris's life estates as determined under Indiana Code § 6–4.1–6–1.

■ Finally, the Department argues that the probate court erred in upholding the $68,000 reduction to the fair market value of the family farm under Indiana Code § 6–4.1–2–4. *See supra* p. 231. (*See also* Appellant's Br. at 10–11.) The Court agrees.

Indiana Code § 6–4.1–2–4 states "the value of the property [ ] transferred [should] equal[ ] the remainder of: (1) the total value of the property transferred; minus (2) the equivalent in money value of the consideration received by the transferor." IND.CODE ANN. § 6–4.1–2–4(c) (West 2006). For purposes of the statute, however, "the term 'consideration' does not include love or affection." *Id.* Thus, Indiana Code § 6–4.1–2–4 imposes the inheritance tax on those amounts in excess of the consideration received by the transferor decedent. *See, e.g., Dep't of State Revenue, Inheritance Tax Div. v. Estate of Hardy*, 703 N.E.2d 705 (Ind. Tax Ct.1998).

Here, Willa Dean's "Affidavit of Contribution" provides that both she and her family had lived on the family farm with her parents since January 23, 1973. (*See* Appellant's App. Ex. U ¶¶ 2, 6.) During that time, Willa Dean made several improvements to the property totaling $68,000. For example, she added a detached garage/pole building, rebuilt the kitchen, re-bricked the house, purchased a new furnace, and added separate living quarters for her mother after her father passed away. (*See* Appellant's App. Ex. U ¶¶ 8–12.) According to the Estate, those improvements represented "the other valuable consideration" as referenced in each

of the warranty deeds. (*See* Appellant's App. Exs. P–T; Oral Argument Tr. at 26–27.) The Court, however, must disagree.

It is clear that Willa Dean lived on the family farm for several years before the death of her parents and voluntarily farmed and improved the property.[4] Nevertheless, in Indiana the presumption is that in a family relationship where there is mutual benefit, such services are rendered gratuitously. *See, e.g., Estate of Hann v. Hann*, 614 N.E.2d 973, 979 (Ind.Ct.App. 1993); *Walting v. Brown*, 139 Ind.App. 18, 211 N.E.2d 803, 805 (1965). Here, the Estate has presented no evidence to rebut that presumption; accordingly, it has not demonstrated that the improvements were made as consideration for the transfers.

## CONCLUSION

For the above stated reasons, the probate court's holding as to Issue I (the appraisal issue) is AFFIRMED; the probate court's holding as to Issue II (the valuation issue), however, is REVERSED. The Court therefore REMANDS the case to the probate court for calculation of the proper amount of inheritance tax and interest due from the Estate, consistent with this opinion.

4. The Estate explained that such an arrangement was actually a "time honored estate planning tool commonly used by 'Mom and Pop' farmers in Indiana who fear being placed in a nursing home when they grow older.... [Thus, the parents retain life estates] to ensure that they would be cared for by th[eir] children and not be moved to a nursing home." (*See* Appellee's Br. at 12–13.)