## TAX COMMISSIONER *v.* ESTATE OF LEBBEUS F. BISSELL ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued March 3—decision released July 5, 1977

*James F. Dawson,* inheritance tax attorney, with whom were *Robert J. Hale,* first assistant tax commissioner, and, on the brief, *Carl R. Ajello,* attorney general, for the appellant (plaintiff).

*John S. Mason, Jr.,* for the appellee (named defendant).

SPEZIALE, J.   This is an appeal from a decree of the Probate Court for the district of Ellington applying the Connecticut succession tax (General Statutes, c. 216) to the named defendant's estate. The action was reserved by the Superior Court for the advice of this court.   The parties stipulated to the pertinent facts and submitted three questions upon which the advice of this court is requested.[1] Practice Book §§ 738, 739; *Naylor* v. *Brown,* 166 Conn. 581, 353 A.2d 709.

Lebbeus F. Bissell, hereafter also referred to as the decedent or donor, died testate on April 15, 1972.   He was survived by his wife, Katherine S. Bissell, hereafter also referred to as the donee, her two sons by a prior marriage (the donor's stepsons), and several issue of these sons. The donor's will, dated March 24, 1972, contained a frequently

---

[1] The questions upon which advice is sought are as follows:

"1. Does Section 12-355, General Statutes of Connecticut, revision of 1958, as amended, apply to the Marital Trust?

2. If the answer to Question 1 is 'no,' should the Marital Trust be taxed entirely at the AA rate in the same manner as if it had passed outright to the Decedent's widow?

3. If Section 12-355 applies to the Marital Trust, should the AA rate be applied to that portion of the Marital Trust which was appointed to pay Federal Estate and Connecticut Succession Taxes imposed by reason of the Widow's death?"

used estate planning design involving two trusts, a "marital deduction trust" and a residuary trust. Under the will, Mrs. Bissell was to receive all of the annual net income of the trust for her life and was given both the unlimited power to withdraw principal at any time during her life and a general power of appointment over the trust assets at her death. In the event these powers were not exercised in full, the amount not withdrawn or appointed was to be added to the residuary trust upon her death. This residuary trust, upon Mrs. Bissell's death, was to be divided into equal portions for her sons and their respective issue. In general terms, each portion would be held for the benefit of the respective son for his life and, upon his death, it would be distributed to his issue in accordance with a prescribed timetable.

Mrs. Bissell, the donee, died testate on June 17, 1972, before the succession tax due in her husband's estate had been computed. She had only partially exercised her general power of appointment over the marital deduction trust, by directing in her second codicil that the portion of the federal estate taxes and state succession taxes attributable to inclusion of the marital deduction trust in her estate, determined at the highest applicable rate, be charged against the marital deduction trust. The unappointed bulk of the assets in the marital deduction trust, therefore, passed into the residuary trust according to the terms of her husband's will.

Because Mrs. Bissell, under her husband's will, was the donee of a general power of appointment over the marital deduction trust at the time of *her* death, succession taxes were imposed on *her* estate for the value of the trust pursuant to §§ 12-345b

through 12-345e of the General Statutes.[2] Mrs. Bissell's estate agreed with the tax commissioner's valuation of the marital deduction trust and with his computation of the succession tax due in her estate.

The subject of the questions reserved is the amount of succession taxes which were due in Mr. Bissell's (the donor's) estate for the value of the marital deduction trust because he had transferred the property at his death subject to a general power of appointment of which he was the donor. General Statutes § 12-345e.[3] In computing this succession tax, the tax commissioner determined that because of the donee's power to appoint, it was impossible at the date of the donor's death to ascertain who would ultimately take the property and in what amount. Accordingly, the tax commissioner offered the donor's estate a compromise computation of the tax pursuant to the provisions of § 12-355 of the General Statutes. This statute permits a fiduciary and the tax commissioner to agree upon an equitable computation when "the tax cannot be determined because of a contingency as to who will take." *Naylor* v. *Brown,* 166 Conn. 581, 583, 353 A.2d 709. The tax commissioner's offer sought to impose a rate of succession tax as if the beneficial succession

---

[2] General Statutes § 12-345c provides in pertinent part: "For purposes of the tax imposed by this chapter [c. 216, "Succession and Transfer Taxes"], a decedent shall be deemed to have made a taxable transfer of any property with respect to which . . . (b) the decedent has at the time of his death a general power of appointment . . . irrespective of whether he has exercised such power of appointment."

[3] General Statutes § 12-345e provides in pertinent part: "Nothing contained in sections 12-345b to 12-345e, inclusive, shall be deemed to relieve from taxation, under this chapter, in the estate of the donor of a general power of appointment, the transfer of the property subject to such power."

in the marital deduction trust at the time of the donor's death was a life use in Mrs. Bissell, with successive life uses in his two stepsons, and the remainder in fee to the stepsons' issue. The donor's estate rejected the compromise computation, arguing that for succession tax purposes the marital deduction trust passed entirely to Mrs. Bissell at her husband's death, and, therefore, because there were no contingencies as to who would take, § 12-355 was inapplicable.

Because an agreement was not reached, the tax commissioner, pursuant to § 12-355 (b), then issued a final computation of the tax at the *highest* rate, which happened to be the same as the compromise computation. The donor's estate challenged the correctness of this computation on the same basis that it rejected the compromise offer. The Probate Court, after a hearing, agreed with the contention of the donor's estate and issued a decree holding that the marital deduction trust should be treated as passing entirely to the donor's wife at the time of his death and ordered that the succession tax in the donor's estate be recomputed entirely at the AA rate, the *lowest* rate. The tax commissioner filed an appeal from this decree with the Superior Court which reserved the legal questions for the advice of this court.

The real dispute here is over the *rate* of taxation. The donor's estate contends that the marital deduction trust should be taxed as though it passed entirely to the widow (AA rate); the tax commissioner claims, however, that the marital deduction trust should be taxed as if there were: a life use in the widow (AA rate), with a successive life use in the stepsons (B rate), and a remainder interest in the issue of the stepsons (C rate).

The position of the donor's estate results in a significantly smaller amount of tax, because the rate of the Connecticut succession tax depends not only on the value of the property passing on a decedent's death, but also on the identity of the persons inheriting the property. Section 12-344 of the General Statutes establishes classes of beneficiaries depending upon their relationship to a decedent, with the lowest rates applicable to class AA (spouse), comparable rates but lower exemptions applicable to class A (ancestors and descendants), higher rates applicable to class B (certain in-laws, siblings, stepchildren, etc.), and the highest rates applicable to class C (all other beneficiaries). Mrs. Bissell (the spouse) would thus be a class AA beneficiary, her sons (the donor's stepsons) would be class B beneficiaries, and their issue (falling in the class of "all other beneficiaries") would be class C beneficiaries. Computed entirely at the AA rate (an outright passing to Mrs. Bissell), the succession tax in the donor's estate would be $810,234, whereas the tax commissioner's computation (life use in Mrs. Bissell, class AA; successive life uses in the donor's stepsons, class B; remainder in their issue, class C) produces a succession tax of $1,026,963.20.

In support of its contention that the marital deduction trust should be taxed in the donor's estate entirely at the lowest rate (AA), as if it passed completely to Mrs. Bissell upon the donor's death, the donor's estate relies largely on an "economic benefits" theory; *Naylor* v. *Brown,* supra; and on statutory construction of § 12-345e, which was amended by the italicized language, in 1974, to read as follows: "Nothing contained in sections 12-345b to 12-345e, inclusive, shall be deemed to relieve from taxation, under this chapter, in the estate of the

donor of a general power of appointment, the transfer of the property subject to such power. *For purposes of computing the rate of taxation under this chapter in the estate of the donor, the property transferred subject to such power shall be deemed to pass to the donee of the power, and the donee of the power shall be deemed to take such property.* The provisions of section 12-340 shall apply with respect to any tax imposed by this section." Public Acts 1974, No. 74-46.

Death taxes are generally divided into estate or transfer taxes and inheritance or succession taxes. An estate or transfer tax, such as the federal estate tax, is a tax imposed on the privilege of transmitting property at death. An inheritance or succession tax is a tax imposed on the privilege of receiving property from a decedent at death. Lowndes, Kramer & McCord, Federal Estate and Gift Taxes (3d Ed.) § 1.2; 42 Am. Jur. 2d, Inheritance, Estate, and Gift Taxes, § 2. "If a testamentary transfer be likened to pitching and catching a ball, an estate or transfer tax would be a tax upon the privilege of pitching the ball, and an inheritance or succession tax would be a tax upon the privilege of catching the ball." Lowndes, Kramer & McCord, op. cit., p. 3.

The rationale of Connecticut's succession tax was recently discussed by this court: "The basis of the succession and transfer tax is 'the right of possession or enjoyment of property rather than the vesting in interest . . . . *Dolak* v. *Sullivan,* 145 Conn. 497, 502, 144 A.2d 312.' *Pape* v. *Sullivan,* 151 Conn. 39, 43, 193 A.2d 480; *Seymour Trust Co.* v. *Sullivan,* 152 Conn. 282, 206 A.2d 420. The taxable incident is 'the shifting of the enjoyment of property — the economic benefits thereof or economic

interests therein.' *Miller* v. *Connelly,* 142 Conn. 144, 148, 112 A.2d 202; *Pape* v. *Sullivan,* supra; *Fabian* v. *Walsh,* 134 Conn. 456, 460, 58 A.2d 384; 42 Am. Jur. 2d, Inheritance, Estate, and Gift Taxes, § 105." *Naylor* v. *Brown,* 166 Conn. 581, 586–87, 353 A.2d 709. This tax is " 'not so much concerned with the refinements of title as it is with the actual command over the property taxed' [citations omitted]." Id., p. 587, quoting *Estate of Sanford* v. *Commissioner of Internal Revenue,* 308 U.S. 39, 43, 60 S. Ct. 51, 84 L. Ed. 20. Being a succession tax, it is imposed on the "privilege of succeeding to the right of possession or enjoyment of property from a former owner at his death; *Pape* v. *Sullivan,* 151 Conn. 39, 43, 193 A.2d 480." *Bunting* v. *Sullivan,* 152 Conn. 331, 336, 206 A.2d 471; see generally, 42 Am. Jur. 2d, Inheritance, Estate, and Gift Taxes, § 4. For taxation under the Connecticut succession tax statute, therefore, there must be a succession to beneficial enjoyment of property. The *rate* of taxation then depends on the identity of the person succeeding to this beneficial enjoyment, and his relationship with the decedent transferor. The argument in this case is over the question of *who* received the marital deduction trust at the decedent's death. As articulated by the donor's estate, the issue is: "Where a husband's will created a marital [deduction] trust over which his widow had a general power of appointment and an unlimited right to withdraw for her own use, and succession taxes were, therefore, imposed on the trust upon the widow's subsequent death as if certain younger-generation beneficiaries had received the entire trust from the widow at that time, should not that same trust be taxed upon the husband's death as if the widow then received the entire trust interest rather than as if the same younger-

generation beneficiaries had also received the trust at the time of the husband's death subject only to the widow's life use?"

The determination of the questions reserved for this court's advice involves the construction of the Connecticut statutory provisions dealing with the taxation of powers of appointment. The history of the Connecticut succession tax on powers of appointment reveals an evolution of the statutory taxation scheme into one that increasingly resembles the federal estate tax. See generally, Berall, Donahue, Oleyer & Tate, "The Legal and Tax Consequences of Powers of Appointment in Connecticut," 50 Conn. B.J., No. 4, p. 481 (hereafter referred to as "Berall"). For estate tax purposes, it is irrelevant that the property subject to the power of appointment originally formed part of, and was taxed in, the donor's estate. Berall, p. 520. Under the Connecticut succession tax, as seen previously, it is the right to succeed to property that is taxable (the privilege of "catching the ball"). Historically, Connecticut applied the common-law concept of "relation back," under which the appointive property was deemed to have passed *directly* from the donor of the power of appointment to the appointee or taker in default. Ibid. Under this doctrine, although the donee of the power was in fact instrumental in determining the ultimate recipient of the appointive property, he was considered merely the donor's agent for disposing of the donor's property, "a mere conduit of the [donor's] bounty." *Bartlett* v. *Sears,* 81 Conn. 34, 42, 70 A. 33; 62 Am. Jur. 2d, Powers of Appointment and Alienation, § 79. From the beginning, problems arose in taxing property made subject to a power of appointment because Connecticut succession tax

statutes had a lower tax rate for transfers to direct heirs than for those to collateral heirs. It was not certain who would succeed to the property through appointment and the *rate* of tax could not be determined until the appointment was actually made and the ultimate recipients were identified. One solution to this problem was an approach which applied the common-law doctrine just discussed. This "common-law approach" treated the transfer as one from the donor and was followed during forty years of exclusive "donor-taxing" in Connecticut, from 1930 to 1970. Under the donor-taxing approach, one tax collection method was to require the estate to post bond for prompt payment of the tax if the tax commissioner and the taxpayer could not agree on a probable tax. See, e.g., General Statutes § 1374 (Rev. 1930). Another tax collection method is illustrated by the statute sought to be applied by the tax commissioner in the present case, § 12-355, which provides for an attempted agreement and, if this is not possible, taxation at the highest possible rate, with a provision for a rebate when the ultimate taxes are determined or the other contingencies are resolved. See generally, Berall, pp. 521-22.

Difficulties in administering the tax under the common-law approach led some states to adopt an alternative method, that of taxing the power of appointment in the donee's estate instead of the donor's. Connecticut had first adopted such a so-called "statutory rule" of donee-taxing in 1909. Public Acts 1909, c. 218, § 5. The donee-taxing type of statute presented many difficulties and was the source of extensive litigation in other states, raising questions of its interpretation and constitutionality, largely because of double-taxation problems. Berall, pp. 521-31. For purposes of the present case, it is

significant that after certain modifications were made in 1923, the Connecticut succession tax presented both: (1) a section providing that where the identity of the beneficiaries was conditioned on the happening of a contingency, the property interests thus transferred should be taxed at the highest possible rate with provision for eventual rebate if appropriate;[4] and (2) a donee-taxing provision for transfers of property subject to a power of appointment which specified that upon the donor's death, the property was to be taxed as if it were an outright passing in fee to the donee of the power of appointment.[5]

Whatever the problems of double-taxation may have been under such a scheme, the legislature deleted the entire donee-taxing statute in its 1930 Revision of the General Statutes before any litigation concerning this controversial provision had occurred in Connecticut. The 1930 revised succession tax did not specifically provide for taxation of powers of appointment, but its contingent remainder taxing provision, § 1374, was broad enough to encompass taxation of powers in the donor's estate. Thus Connecticut had exclusive donor-taxation of powers of appointment for the ensuing forty-year period, from 1930 to 1970.

[4] Public Acts 1923, c. 190, § 11, was a provision similar to the current § 12-355 dealing with taxation of interests where the ultimate beneficiaries cannot be ascertained because of a contingency as to who will take. Section 12-355 is the provision which the tax commissioner seeks to have applied in the present case.

[5] Public Acts 1923, c. 190, § 3, added the following to the donee-taxing statute: "For the purposes of the tax herein imposed any disposition of property to or for the use of a beneficiary for life, together with a power of appointment to such beneficiary, shall be deemed to be a disposition of the fee in such property by the donor of the power of appointment." This is similar to § 12-345e which the donor's estate seeks to have applied in the present case.

Berall, pp. 527-30. It was during this same forty-year period that the federal estate tax rules for taxing powers of appointment were fully developed, and that such powers became increasingly important as estate planning devices for obtaining the maximum federal estate tax marital deduction. Id., p. 530. States which had substituted an estate tax for a succession tax "were following the federal lead in taxing property subject to powers of appointment in its entirety in the donor's estate and retaxing such property in the donee's estate under statutorily defined circumstances." Berall, p. 530. Similarly, some succession tax states with both donee-taxing and contingent remainder statutes were also obtaining a two-tax result by using both statutes for taxing property subject to powers of appointment. Berall, p. 531.

It was with this background that, in 1969, Connecticut's legislature also began looking at this opportunity for new sources of revenue. The crucial turning point in Connecticut's succession tax structure came with the enactment of Public Acts 1969, No. 796, subsequently General Statutes § 12-345a. In this enactment, "it is obvious that the General Assembly did not deal with what Mr. Justice Frankfurter called the 'recondite niceties of property law.' *Estate of Rogers* v. *Helvering,* 320 U.S. 410, 414, 64 S. Ct. 172, 88 L. Ed. 134. [Section 12-345a] unequivocally reaches the transfer of economic benefits to an appointee upon an exercise of a power of appointment by a donee and to a taker in default by the omission of its exercise notwithstanding prior taxation in the donor's estate." *Naylor* v. *Brown,* 166 Conn. 581, 587, 353 A.2d 709. This result was reached "[e]ven though in common-law property concepts the appointee takes from the

donor of the power of appointment rather than from the donee of the power." Id., p. 588. As applied to the present case, this tax on the power of appointment in the donee's estate treated the economic interest in the marital deduction trust assets as passing from Mrs. Bissell to the class B and class C beneficiaries upon her death. The donor's estate argues that, therefore, these same class B and class C beneficiaries should not be treated as having twice been transferred the trust assets, once at the donee's death, yet once previously, at the donor's death. This, in effect, was the result of the tax commissioner's application of the compromise statute, § 12-355, which determined that these beneficiaries were the ultimate takers of the marital deduction trust, subject only to a life estate in Mrs. Bissell, the donee.

The 1969 legislation enacting the donee-taxing provision did not address the specific issue of the continued application of § 12-355, the compromise statute for contingencies, to taxation of appointive property in the donor's estate. The potential ambiguity resulting from this omission is illustrated by the present case; as previously set forth, however, an amendment to § 12-345e was enacted in 1974 which specified that for purposes of computing the rate of taxation in the donor's estate, the appointive property is deemed to pass to the *donee* of the power of appointment. Public Acts 1974, No. 74-46. Although this language was added two years after the donor's death, it seems clear that the intent of the legislation was *not* to change the law, but rather to clarify the law as it then existed. This construction of the statute is consistent with its legislative history. See *Harris* v. *Planning Commission,* 151 Conn. 95, 100, 193 A.2d 499. The statement of pur-

pose set forth in raised committee bill No. 334 stated that the enactment was "[t]o make a definite determination on whom will be taxed for property passing under a power of appointment." Such a statement is consistent with the purpose of clarifying an existing uncertainty in the law, as opposed to enacting a deliberate change. See *State ex rel. Pettigrew* v. *Thompson,* 135 Conn. 228, 233–34, 63 A.2d 154. The floor debates dealt largely with the inappropriate and unfair results of the tax commissioner's administrative interpretation applying § 12-355 to a general power of appointment, considered to be the equivalent of double-taxation; they did not speak in terms of an outright change in the law itself. See 1974 House Judiciary Committee Proceedings, 158; 17 Conn. H. Proc. Pt. 3, 1974 Sess. pp. 1098-1108. Although not controlling on statutory interpretation, judicial notice may be taken of these discussions. See *Harris* v. *Planning Commission,* supra; *Lee* v. *Lee,* 145 Conn. 355, 358, 143 A.2d 154. The language was not incorporated into a separate section of the General Statutes, with its own effective date. This is in contrast to other statutes imposing succession taxes and amendments thereto. Compare, e.g., General Statutes §§ 12-341a, 12-341c, 12-344b. Instead, the new language was made an integral part of § 12-345e, which had its own effective date retroactive to January 1, 1972. This section already provided that the taxation of appointive property in the estate of the donee did not relieve the donor's estate from taxation for the transfer of such property. The language added by Public Acts 1974, No. 74-76, simply clarified the effect of the combined provisions for both donor and donee taxation. A succession tax statute must be construed as a whole; its various provisions are

in pari materia and must be construed together so as to carry out the intent of the legislature. 42 Am. Jur. 2d, Inheritance, Estate, and Gift Taxes, § 33. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. See *Hartford* v. *Suffield,* 137 Conn. 341, 346, 77 A.2d 760. Section 12-345e was clearly applicable to the donor's estate, and, as an integral part of it serving to clarify the original provision, so was the added language of 1974 Public Acts, No. 74-46. The legislature unambiguously mandated that the appointive property be deemed to pass entirely to the donee at the donor's death. This result was both fair and consistent with the recent changes effected in the succession tax as discussed above. We hold that at the time of the donor's death there was no uncertainty as to who would ultimately be deemed to take the assets of the marital deduction trust, and, therefore, § 12-355 was inapplicable. The marital deduction trust should therefore be taxed entirely at the AA rate in the same manner as if it were an outright passing to the donee, Mrs. Bissell.

Accordingly, we advise the Superior Court that the answer to the first of the reserved questions[6] is "No" and the answer to the second question is "Yes." This determination renders unnecessary a consideration of the third reserved question.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.

---

[6] See footnote 1, supra.