**In re ESTATE of Katherine W. GROTRIAN, Deceased.**

No. 3-1078A290.

Court of Appeals of Indiana,
Third District.

June 3, 1980.

Rehearing Denied July 14, 1980.

Jeanne S. Miller, New Haven, for appellant.

Theo. L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

This is an appeal by Irma Grotrian (Irma) from a judgment determining that the correct amount of inheritance tax due on a property transfer in 1942 was $1,395.

The facts are not in dispute. On May 22, 1941 Melvin Grotrian acquired title to a 34-acre tract of land in Allen County. He died intestate on September 20, 1941 survived by his father, Henry, his mother Katherine and his brother, Wilbur. Under the intestate succession laws in effect at that time Henry and Katherine took an undivided one-half interest in the realty as joint tenants while the other one-half interest passed to Wilbur. By a deed dated February 17, 1942 Wilbur conveyed his interest in the premises to Henry and Katherine as tenants by the entirety. On February 18, 1942 Henry and Katherine conveyed by deed a fee simple remainder interest in the property to Wilbur reserving to themselves a life estate for and during their natural lives (hereinafter referred to as the

1942 transfer). On May 5, 1950 Wilbur died intestate and his remainder interest passed to his spouse, Irma. On January 10, 1955 Henry died leaving Katherine as the sole surviving life tenant. She died on June 28, 1977 and it is her death which gave rise to the inheritance tax dispute in this case.

To understand the positions taken by the parties involved here it is necessary to review various inheritance tax statutes. IC 1971, 6–4.1–5–1(b) (Burns Code Ed.)[1] provides that when the net taxable value of a property interest transferred by a decedent to a particular Class A transferee is over $25,000 but less than $50,000, the inheritance tax imposed is $250, plus 2% of the net taxable value over $25,000. A Class A transferee means a transferee who is a surviving spouse, lineal ancestor or lineal descendant of the transferor. IC 1971, 6–4.1–1–3(a) (Burns Code Ed.).[2]

IC 1971, 6–4.1–5–1(c)[3] provides that when the net taxable value of a property interest transferred by a decedent to a particular Class B transferee is less than $100,000, the inheritance tax imposed is 5% of the net taxable value. A Class B transferee is defined to include the widow of a child of the transferor. IC 1971, 6–4.1–1–3(b)(3).

Therefore if the 1942 transfer is regarded as a Class A transfer then the tax due should have been $250, plus 2% of taxable value over $25,000. But if that transfer is considered to be a Class B transfer then the tax was properly computed at 5% of taxable value.

Irma maintains that the tax due on the transfer ought to be measured by the relationship of the transferor to the transferee under the deed. Insofar as Wilbur was the transferee under the deed and a lineal descendant of Katherine, Irma reasons that the conveyance qualifies as a Class A transfer. The State, on the other hand, insists that the tax should be determined by the relationship of the transferor to the benefi-

ciary obtaining possession at the transferor's death. It argues that Irma ought to be regarded as the person on whom the tax is imposed in that she was entitled to possession and enjoyment of the property upon Katherine's death by virtue of her remainder interest. Since Irma was the widow of Wilbur who was a child of the transferor, she falls within the rubric of a Class B transferee.

The trial court agreed with the State and found:

"The Court having had the written objections to determination of Indiana Inheritance Tax filed by Irma Grotrian under advisement, now finds that Irma Grotrian's interests were properly taxed as a Class B transferee for the reason that the Court finds the intent of the Indiana Inheritance Tax is to impose the tax upon the actual beneficiary coming into possession at the donor's death. Accordingly, the written objection to the determination of Indiana Inheritance Tax filed by Irma Grotrian is denied."

■ The inheritance tax statutes are designed to tax the privilege of succeeding to property rights of deceased persons and the tax is imposed on the interest taken by the transferee and not the property itself. *State v. Est. of Powell* (1975), 165 Ind.App. 482, 333 N.E.2d 92; *Crittenberger, Auditor v. State, etc., Trust Co.* (1920), 189 Ind. 411, 127 N.E. 552; *Armstrong, Admr. v. State, ex rel.* (1918), 72 Ind.App. 303, 120 N.E. 717. IC 1971, 6–4.1–2–4 (Burns Code Ed.) sets forth the types of transfers subject to inheritance tax. It reads in part:

"(a) The inheritance tax applies to the following types of property interest transfers:

(1) Transfers which are made under a deceased transferor's will or under the laws of intestate succession, as a result of the transferor's death;

(2) Transfers which are made in contemplation of the transferor's death;

---

1. This statute was amended by Acts 1979, P.L. 75, § 16(b) effective July 1, 1979.

2. This statute was amended by Acts 1979, P.L. 75, § 16(b) effective July 1, 1979.

3. The 1977 amendment substituted "7% of net taxable value" for "5% of net taxable value" in the table to subsection (c).

(3) Transfers which are made in such a manner that they are intended to take effect in possession or enjoyment at or after the transferor's death  .  .  .."

It seems apparent that this statute taxes not merely those interests which are deemed to pass at death according to the refined technicalities of the law of property but also *inter vivos* transfers that are too much akin to testamentary dispositions not to be subjected to the same excise. Accordingly, the tax may be imposed on certain *inter vivos* transfers but its collection is inevitably postponed until the death of the transferor.

As a result of the 1942 transfer Wilbur held a vested remainder in the property and this interest was alienable by him. *Oldham v. Noble* (1946), 117 Ind.App. 68, 66 N.E.2d 614. Thus the gift took effect in 1942 even though the tax did not accrue until the transferors had died. Wilbur was the transferee under the deed and entitled to succeed to the property. Any right to enjoyment or possession of the property which Irma obtained derived from Wilbur's right of succession. Irma's interest must be viewed as a conveyance from Wilbur rather than from Katherine. If Wilbur had died after Katherine there would be no doubt but that the transfer would qualify as a Class A transfer. Even though he predeceased her this fact does not compel a contrary conclusion since any interest transferred by the deed had to pass through Wilbur in order for Irma to claim an interest therein as his heir.

The inheritance tax is measured by the relationship of the transferor to the transferee under the deed. If the Legislature had intended for actual possession or enjoyment on the date of the transferor's death to be the determining factor, it could easily have done so but there is nothing in the statutes indicating such intent. IC 1971, 6–4.1–5–1(a) refers to "property interests transferred by a decedent to a particular transferee." Other portions of the inheritance tax code are replete with expressions similar thereto. As noted above liability for inheritance tax attaches to the right of succession. Wilbur succeeded to Katherine's interest. Irma succeeded to Wilbur's interest. For these reasons the 1942 transfer should have been taxed as a Class A transfer.

Judgment reversed.

Reversed.

GARRARD, P. J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent.

The reason for my dissent is twofold. Although the issues are not necessarily exclusive, I will treat them as such for clarity. In *PART A*, the issue is raised *sua sponte* in the interest of assuring justice. In *PART B*, I offer a method for determining the inheritance tax liability in all cases. This method points out the clear error of the Majority Opinion.

### PART A

This Court will not review an issue presented for the first time upon appeal except to avoid grave injustice. *Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d 651, *cert. denied*, 400 U.S. 930, 91 S.Ct. 187, 27 L.Ed.2d 190 (1970). Also, as this Court stated in *John's Cash Furniture Stores v. Mitchell* (1955), 126 Ind. App. 231, 125 N.E.2d 827, 830:

"While we are not required to search for errors not made manifest in the record as it is presented to us, we are not so restricted that we must close our eyes to that which is clearly before us. If we were limited entirely to the argument of counsel in reaching our decisions, to the exclusion of our own observation, we would many times permit gross injustice to prevail, and our oath to discharge our duties honestly and impartially would be a fruitless, futile and hypocritical gesture."

Although not raised by either party, nor addressed by the Majority, I raise the following issue *sua sponte* in the interests of justice.

The facts surrounding the "1942 transfer" raise the serious question of whether it was a *type* of transfer taxable under the inheritance tax statutes. Ind.Code § 6–4.1–2–4 (Burns Code Ed.), as its title indicates, defines "Types of transfers subject to inheritance tax." Subsections (a)(1), (2), and (3) define transfers that are made by will, intestate succession, in contemplation of death, and transfers which are essentially substitutes for testamentary dispositions. (*See* discussion in *PART B*). Subsection (a)(4) defines certain transfers made in payment of a claim against the decedent's estate. Thereafter, subsection (c) states:

"If a transfer described in clause (1), (2), (3) or (4) of subsection (a) of this section is made for valuable consideration, the value of the property so transferred equals the remainder of

"(1) The total value of the property transferred, minus

"(2) The equivalent in money value of the consideration received by the transferor.

For purposes of this subsection, the term 'consideration' does not include love or affection. . . ." (Citations omitted.).

Simply stated, if the transfers described in subsections (a)(1) through (a)(4) are made in exchange for equivalent value, then it is not a taxable transfer under the inheritance tax laws. If the above-described transfers are made in exchange for less than equivalent value, then that amount of value in excess of the consideration received by the transferor is taxable under our inheritance tax law.

The facts in this case, as related by the Majority, are as follows: Upon the death of Melvin in 1941, Henry and Katherine owned an undivided ½ interest in a 34 acre tract of land while their son, Wilbur, owned the other ½ interest in the 34 acre tract of land. On February 17, 1942, Wilbur conveyed his ½ interest in the property to Henry and Katherine. The next day—February 18, 1942—Henry and Katherine conveyed, reserving a life estate in themselves, a fee simple remainder interest to Wilbur.

These transfers, by Henry and Katherine and Wilbur upon two successive days, were clearly a single transaction. The net effect of this transaction was that Henry and Katherine transferred a "remainder interest" in ½ of the property to Wilbur, and Wilbur transferred a "life estate" in ½ of the property to Henry and Katherine. That is, having previously owned the whole of a ½ interest in the property, Henry and Katherine merely gave up the vested "remainder" in ½ of the property in exchange for the present "life estate" of Wilbur's ½ interest. Or, in other words, Henry and Katherine exchanged their rights of fee simple ownership in ½ of the property for the right of present possession for life of the whole of the property. Likewise, Wilbur exchanged valuable consideration for other valuable consideration.

Therefore, under the above cited subsection (c), the value of the property transferred by Henry and Katherine to Wilbur less the value of the property received from Wilbur should be determined. If this was in fact a fair equivalent exchange, then the transaction was not one within the inheritance tax statutes and the issue presently before this Court is moot.

If the exchange was not for a fair equivalent amount, the value transferred in excess of the value received by Henry and Katherine should have been the "value" used for the computation of the inheritance tax liability here in issue.

The determinations of the value of the property interests here involved would be questions of fact that should be determined at the trial court level. I would, therefore, remand this case to the trial court for the parties here involved to address these issues. If the trial court should determine that the transfers were not made for fair equivalent value, then the same issue as raised upon this appeal would arise. In that event, I offer *PART B* of this dissent as an analytical tool that should be used by the trial court to determine the proper amount of the inheritance tax liability.

## PART B

This is a case of first impression for two reasons. First, the Indiana Courts have not had to address the issue of determining an inheritance tax rate in relation to a "second" successive transferee. That is, this is the first case where the determination of the inheritance tax liability does not involve the original transferee of the property. Second, logically following from the first, the Courts in Indiana have never analyzed the difference between possession or enjoyment of the property and the ownership of the property in the context of the inheritance tax. This "difference" has never been analyzed because in prior cases, at the time of the transferor's death, the original transferee owned the property and had the right to the present enjoyment or possession. Being a case of first impression, this Court should give the issues involved a thorough examination.

Contrary to the Majority's Opinion, the Indiana inheritance tax is determined by the actual possession or enjoyment of the property on the date of the transferor's death. The tax rate is, in fact, determined by the relationship of the beneficiary-transferee with the present possessory interest to the transferor upon the death of the transferor.

The Indiana inheritance tax is imposed upon three [1] basic types of property interest transfers:

"(1) Transfers which are made under a deceased transferor's will or under the laws of intestate succession, as a result of the transferor's death;

"(2) Transfers which are made in contemplation of the transferor's death;

"(3) Transfers which are made in such a manner that they are intended to take effect in possession or enjoyment at or after the transferor's death;"

Ind.Code § 6–4.1–2–4(a)(1), (2), and (3) (Burns Code Ed.). As stated by the Court in *Matter of Estate of Bannon*, (1976), Ind. App., 358 N.E.2d 215, 217:

"The inheritance tax is directed toward transfers of property by will, by intestate succession, and by other such transfers that substitute for testamentary dispositions [*sic*]."

Gifts in contemplation of death and transfers of property reserving life estates in the transferor (transfers of types (2) and (3) above) are transfers which are, in actuality, substitutes for testamentary dispositions. These dispositions (transfers)—whether testate, intestate, or by testamentary substitution—give rise to an inheritance tax liability.

An examination of the inheritance tax law in Indiana and other jurisdictions establishes three essential elements constituting the inheritance tax liability:

(1) The death of the transferor;

(2) The transferor's transfer of ownership of a property interest to the transferee; and,

(3) The transferee's possession of a present possessory interest in the property transferred.

The order of occurrence of these elements is not determinative of the tax liability. There are certain limitations, however, upon each element which should be examined.

## I.

### Death of Transferor

The first necessary element for inheritance tax liability is the death of the trans-

---

1. Under IC § 6–4.1–2–4(a) (Burns Code Ed.), the following transfers are also subject to inheritance tax liability:

"(4) Transfers which are made in payment of a claim against the transferor's estate if:

"(i) The claim results from a contract or antenuptial agreement made by the transferor; and

"(ii) Payment of the amount claimed is due at or after the transferor's death under the terms of his will or the contract;

"(5) Those jointly held property transfers described in section 5 [6–4.1–2–5] of this chapter;

"(6) Those transfers which are made by a trust deed in the manner described in section 6 [6–4.1–2–6] of this chapter; and

"(7) Those transfers which are made to an executor or trustee in the manner described in section 7 [6–4.1–2–7] of this chapter."

feror. *See* Ind.Code §§ 6–4.1–1–1 to 6–4.1–12–11 (Burns Code Ed. & Supp. (1979)). This element is particularly important in that there is no tax upon absolute *inter vivos* gifts. *Matter of Estate of Bannon, supra; Armstrong v. State ex rel. Klaus,* (1918), 72 Ind.App. 303, 120 N.E. 717. Therefore, even if the other two elements are present—a transfer of ownership of property with a present possessory interest in the transferee—there is no inheritance tax liability without the death of the transferor. As stated in 27 I.L.E. § 362, at 323:

"Whether the transfer be by operation of the testator's will, by operation of intestate laws, or by operation of some transfer made in contemplation of death or intended to take effect in possession or enjoyment at or after death, it is the fact of death which creates the transfer on which the inheritance tax is imposed."

And, under IC § 6–4.1–8–1:

"The inheritance tax imposed as a result of a decedent's death is a lien on the property transferred by him . . . the inheritance tax accrues and the lien attaches at the time of the decedent's death."

Therefore, one of the necessary elements for the imposition of an inheritance tax liability is the death of the transferor.[2]

## II.

### Transfer of Ownership

The second necessary element for the inheritance tax liability to accrue is that the transferor must transfer ownership of a property interest to the transferee. IC § 6–4.1–5–1. For purposes of analysis, this element involves a two step process. First, it must be determined whether there actually is a "transfer." This requires a shifting of the "ownership" from one individual to another. The resolution of this issue will generally be obvious. *But see, State, Dept. of Revenue v. Union Bank* (1978), Ind.App., 380 N.E.2d 1279 (joint and successive life estates in the transferors); *State Dept. of Revenue v. Estate of Weinstein* (1967), 141 Ind.App. 395, 228 N.E.2d 23, *rehearing denied with opinion,* 141 Ind.App. 399, 229 N.E.2d 741.

Second, it must be determined whether the "ownership" interest transferred to the transferee was actually owned by the transferor-decedent. The resolution of this issue will also, as a general rule, be obvious. The possible intricacy of this issue[3] however, was demonstrated in *Matter of Estate of Bannon, supra.* In *Bannon,* Husband had a 10 year employment contract with Employer. Under the agreement, if Husband died Employer was to pay an annuity to Husband's wife for an amount equal to the remainder of the contracted amount. Husband died and the issue before the Court was whether the annuity was subject to inheritance tax. The court stated that: "The decisive question, then, is *whether the decedent had an interest in the property which passed to the beneficiary upon his death.*" (Original emphasis.). 358 N.E.2d at 217. The court ruled that the annuity was not subject to the inheritance tax because the only right Husband had while he was alive was the right to his salary. Husband had no interest in the annuity payable to his widow. In the instant case, it is not in dispute that the transferors (Henry and Katherine) transferred ownership of the

---

2. One further limitation upon the element of death of the transferor should be noted. Under IC § 6–4.1–2–4(b), "[a] transfer is presumed to have been made in contemplation of the transferor's death if it is made within two [2] years before his date of death. However, the presumption is rebuttable." The order of occurrence of the three elements is not determinative of the tax liability. The time span between the occurrence of three elements may, however, be determinative. Presumably, if there is a transfer of a present possessory interest of the transferor's property more than two years before the transferor's death, then the transfer will not be deemed to be one made in contemplation of death. A transfer within two years of death, however, will be presumed to have been made in contemplation of death. Therefore, the time span between the occurrence of the elements could be determinative of the issues.

3. For a similar issue involving an insurance policy, *see Oklahoma Tax Commission v. Harris* (1969), Okl., 455 P.2d 61.

property and that such ownership was held by a transferee.[4]

## III.

### Present Possessory Interest

The third necessary element for the inheritance tax to accrue to a particular individual is that the transferee have a present possessory interest in the transferred property. It should first be noted that transfers by testate and intestate succession, and by gifts made in contemplation of death, simultaneously transfer ownership of the property and the right of a present possessory interest in the property.[5] Therefore, there is no need—for the purpose of determining inheritance tax liability—to separate the concepts of ownership of property interests from the right to the present possession and enjoyment of such property.

Under certain circumstances, however, the ownership of property must be separated (at least conceptually) from the right to the present possession and enjoyment of the property to determine the inheritance tax liability. This is a well established principle in Indiana—though it may not be recognized as such. The conveyance of property subject to a life estate in the grantor is a transfer intended to take effect in possession or enjoyment at or after the death of the transferor and is, therefore, clearly within the purview of the inheritance tax statutes. IC § 6–4.1–2–4 (Burns Code Ed.); *State, Dept. of Revenue v. Union Bank, supra.* It is well established that the original transfer is not subject to the inheritance tax, but that upon the death of the transferor, the liability for the inheritance tax

accrues. *State, Dept. of Revenue v. Union Bank, supra; Indiana Dept. of State Revenue v. Mertz* (1949), 119 Ind.App. 601, 88 N.E.2d 917.

Upon the original transfer the transferee owns the "whole" of the property except for the present possessory interest, *i. e.*, the transferee owns the vested remainder. The "ownership" of the property has been transferred except for the present possessory interest. On the other hand, the transferor has transferred all of his interest in the property except for his present possessory interest. That is, ownership has been shifted from the transferor to the transferee except for the present possessory interest. No tax is imposed: first, because there is no tax upon *inter vivos* transfers; and second, because no inheritance tax is imposed unless there is a present possessory interest transferred.

Upon the transferor's death, however, the inheritance tax is imposed. The only interest transferred upon the transferor's death is the present possessory interest. The only interest the transferor owns at death (and the only interest the transferee does not own at the transferor's death) is the present possessory interest. It is, therefore, the present possessory interest that is taxed. As stated by the court in *Matter of Estate of Bannon, supra*: "The only meaningful distinction between an *inter vivos* gift and a testamentary gift is that in the latter the transferor enjoys the property throughout his life. . . ." 358 N.E.2d 217. It can just as easily be formulated that the only meaningful distinction between an *inter vivos* gift and a testamentary gift is that in

4. The dispute here in issue is whether Irma is to be deemed the transferee determining the inheritance tax rate.

5. As correctly pointed out by the Majority, the inheritance tax law is not based upon "the refined technicalities of the law of property . . . ." The inheritance tax law cannot, however, be completely divorced from property law. Therefore, to avoid confusion between these overlapping areas of law and for the sake of simplifying this discussion, "ownership" of property will be distinguished from the right of "present possession and enjoyment" of the property. Generally, "ownership" will be the

same as owning the "fee simple" in real property. Throughout this dissent, ownership will *also* refer to owning the fee simple vested remainder interest that is subject to a life estate in another. On the other hand, "present possession and enjoyment" of the property will mean just that; for example, the right to use the property, live on the property, or expend income derived from the property. Throughout this dissent, "present possession and enjoyment" will *also* refer to the life estate to which the fee simple vested remainder interest is subject.

the former the transferee enjoys the property after the life of the transferor. Indiana has no tax upon the *inter vivos* gift—upon the transfer during life of the present enjoyment of the property. The inheritance tax liability is imposed, however, where the transfer of the present possessory interest (enjoyment) is postponed until the death of the transferor.

Again, as stated in *Matter of Estate of Bannon*, 358 N.E.2d at 217, the test is "*whether the decedent had an interest in the property which passed to the beneficiary upon his death.*" (Original emphasis.) In the case of an *inter vivos* transfer with a reservation for life in the transferor, the question is whether the transferor-decedent had an interest in the property which passed to the beneficiary upon the transferor's death. The answer is clearly *yes* and the transferred interest was the *present possessory interest.*

The intent of the Legislature to tax the present possessory interest can be discerned from the statute and should, therefore, be given effect. *Gonser v. Board of Commissioners* (1978), Ind.App., 378 N.E.2d 425. Under IC § 6–4.1–2–4(a)(1) & (2), *supra* —testate and intestate transfers and gifts made in contemplation of death—the present possessory interest and the property ownership are transferred simultaneously. There was no need for the Legislature to separate the present possessory from the ownership interests. In IC § 6–4.1–2–4(a)(3), *supra*, however—where the present possessory interest is retained by the transferor until death—the Legislature plainly intended to separate the present possessory from the ownership interests by taxing transfers "intended to take effect in possession or enjoyment at or after the transferor's death." *Id.*

IV.

Application of the Element of Present Possessory Interest

As correctly stated in the Majority Opinion: "The inheritance tax statutes are de-signed to tax the privilege of succeeding to property rights of deceased persons and the tax is imposed on the interest taken by the transferee and not the property itself." (Citations omitted.). The inheritance tax liability should, therefore, be determined in relation to the individual succeeding to the property rights of the deceased individual. The tax rates under the Indiana inheritance tax are determined by the relationship of the "decedent to a particular transferee." IC § 6–4.1–5–1 (Burns Code Ed.). The "particular transferee" should be determined as the transferee succeeding to the present possession or enjoyment of the property upon the transferor's death.

As clearly established by the cases where the transferor retains a life estate in the property, the only interest succeeded to by the transferee upon the transferor's death is the present possessory interest. It is the privilege of present possession of the property which is taxed. Just as clearly, therefore, the one succeeding to the present possessory interest is the "transferee" under the inheritance tax statutes. The transferee—the individual succeeding to the present possessory interest—determines the tax rates.[6] Similar to the Indiana inheritance tax rates, the Connecticut tax rates depend upon the transferee's relationship to the decedent-transferor. Connecticut General Statutes Annotated § 12–344 (1980 Supp.); *Tax Commissioner v. Estate of Bissell* (1977), 173 Conn. 232, 377 A.2d 305. In *Estate of Bissell, supra*, the Connecticut Supreme Court stated the following in determining the tax rate under the Connecticut inheritance tax system:

"The basis of the succession and transfer tax is 'the right of possession or enjoyment of property rather than the vesting in interest . . . . The taxable incident is 'the shifting of the enjoyment of property—the economic benefits thereof or economic interests therein.' . .

6. Under IC §§ 6–4.1–3–10, –11, & –12 (Burns Code Ed.), this relationship also determines Class A, B, or C exemptions, respectively.

This tax is 'not so much concerned with the refinements of title as it is with the actual command over the property taxed' . . . Being a succession tax, it is imposed on the 'privilege of succeeding to the right of possession or enjoyment of property from a former owner at his death; . . . For taxation under the Connecticut succession tax statute, therefore, there must be a succession to beneficial enjoyment of property. *The rate of taxation then depends on the identity of the person succeeding to this beneficial enjoyment, and his relationship with the decedent transferror.*"

*Id.* at 238–39, 377 A.2d 308–309 (citations omitted) (emphasis added.).

As would be true under the Connecticut tax scheme, Irma is clearly the "particular transferee" under Indiana's inheritance tax statutes. Irma received the present possessory interest (enjoyment) of the property upon Katherine's death. Therefore, it should be Irma's relationship to the decedent-transferor (Katherine), rather than Wilbur's relationship, which determines the tax rate.

The method by which a transferee obtains the right to the present possessory interest should be irrelevant to the determination of the tax liability. The Tennessee inheritance tax rates—like those in Indiana—are determined by the relationship of the transferee to the transferor. Tennessee Code Annotated §§ 30–1609 and 1610 (Supp.1979). In *First National Bank of Memphis v. McCanless* (1946), 184 Tenn. 114, 195 S.W.2d 756, Decedent left property by will to her husband who had predeceased her. Under a Tennessee lapse statute, the husband's daughter by a former marriage received the legacy from Decedent (daughter's stepmother). To obtain a lower tax rate, the daughter argued that she received the property through her father rather than from her stepmother (Decedent). In refuting this argument, the Tennessee Supreme Court stated the following: "Each [transferee] is classified according to the relation of such recipients [transferees] to the donor [transferor], *not by the method* of their acquisition." *Id.* at 119, 195 S.W.2d at 758 (emphasis added). The Court went on to state that "The lapsed legacy statute did not vitalize the dead father of this recipient so as to enable him to take and transmit property." *Id.* Analogously, it can be said of the case at hand that the Indiana inheritance tax statutes did not resurrect Wilbur to enable the transfer of the property through him to Irma. In fact, the supposition of Wilbur's survival, or the divination into events occurring "[i]f Wilbur had died after Katherine . . .," (see Majority Opinion) is likewise irrelevant to the determination of the inheritance tax rates. California also has inheritance tax rates determined by the relation of the transferee to the decedent-transferor, Cal.Rev. & Tax Code §§ 13308–13310, 13404–13406 (1970) and in the case of *In re Estate of Clarke* (1967), 66 Cal.2d 142, 56 Cal.Rptr. 897, 900, 424 P.2d 337, 340, the court emphasized that the inheritance tax is a transfer tax and that "the essential question is not who theoretically should have received the beneficial use of the property but who actually obtained the property."

It should be noted at this point that, as a general rule, it would be correct to state that the "transferee" is the individual receiving the *property* upon the transferor's death (as was stated by the court in *In re Estate of Clarke, id.*). Certainly, this will be true in the case of testate and intestate transfers. It will also be true in cases of gifts made in contemplation of death and in most transfers which are testamentary substitutions.

It is "more" accurate to state, however, that the "transferee" is the individual receiving the *present possessory interest* of the property. For example, Grandfather owns Blackacre in fee simple. Grandfather transfers, in fee simple, Blackacre to Grandson reserving in himself (Grandfather) an estate for life with a successive estate for life in Son (son of Grandfather and father of Grandson). Upon Grandfather's death, Son receives a life estate in the property. Son has a taxable inheritance in that he received a present possesso-

ry interest in the property upon the death of Grandfather. To say, however, that Son is liable upon an inheritance tax because he received the property is a somewhat misleading statement. Clearly, Grandson "received" the property subject to Son's life estate.

It should be further noted that "present possessory interest" should be taken as a *relative* term. That is, the transferee need not, as example, be in actual possession of real or personal property or be able to expend the funds of the property. The element of "present possessory interest" only requires that the transferee be able to realize a present benefit or enjoyment from the property. For example, in Indiana a vested remainder interest in real property is alienable. *Oldham v. Noble* (1946), 117 Ind.App. 68, 66 N.E.2d 614. The owner, therefore, can transfer his remainder interest (e. g., by gift or sale) at any time. This is a "present possessory interest." Applied to the facts of this case, Wilbur had such a "present possessory interest." There was no inheritance tax due upon the "1942 transfer" because there is no tax upon *inter vivos* gifts and the transferors had not died. There was, however, an inheritance tax liability which accrued upon the death of Wilbur. Irma received, upon Wilbur's death, the remainder interest formerly vested in Wilbur. Irma had a "present possessory interest" in the remainder interest which ownership had transferred upon the death of the transferor.

The conclusion is clear that the third element necessary for the inheritance tax liability to accrue is that the transferee have a present possessory interest in the property. As stated by the Tennessee Supreme Court in *Baker v. McCanless* (1941), 177 Tenn. 571,

575, 151 S.W.2d 1082, 1084: "The tax is imposed 'on transfers of property * * * intended to take effect in possession or enjoyment at or after death * * *.' That is to say, the tax is on the transfer of possession and enjoyment."

The liability for inheritance tax, therefore, accrues upon the death of the transferor where the transferor's ownership of a property interest is transferred to the transferee who then has a present possessory interest in the property.

## V.

### Determination of Value

Under IC § 6–4.1–5–1 (Burns Code Ed.), the taxable value of the property is "[t]he total fair market value on the date of the decedent's death of the property interests transferred by the decedent to the transferee under a taxable transfer . . . ." The measure of the value of the property taxed is the value of the property to which the present possessory interest attaches. Generally, as under testate or intestate transfers, the present possessory interest will attach to the "whole" of the property transferred since the whole property as well as the right to the present possessory interest passes at the time of the transferor's death.

This principle holds true where the present possessory interest is not transferred at the time of the transfer of ownership. It is at this point, however—as demonstrated by the Majority Opinion—that further confusion may arise. For example, where the transferor transfers property retaining a life estate (present possessory interest), it is *not* this original transfer that is being taxed.[7] Neither is it some "fictional"

---

7. To illustrate this point, I offer a simple hypothetical:

Father owns Blackacre in fee simple (the "whole" property). Father, reserving a life estate in himself (the "present possessory interest"), transfers Blackacre to Son who then owns the fee simple vested remainder interest. At a later date, Son transfers his remainder interest back to Father. Thereafter, Father dies leaving Blackacre to Daughter under his will.

There is, as stated above, no tax upon the *inter vivos* transfer. Is there a tax imposed upon Son at the death of Father? No! Son has no interest to be taxed upon. Remember, the inheritance tax is imposed upon the privilege of receiving property. This may have been an *inter vivos* transfer intended to take effect in possession upon death of Father, but no death transfer to Son occurred.

This hypothetical is similar to the case at hand. Wilbur had no interest to be taxed upon

transfer of the "whole" property at the time of the transferor's death that is being taxed. The tax is upon the transfer of the present possessory interest.

The measure of the value of the property taxed is the value of the property to which the present possessory interest attaches. Generally, this will be the value of the "whole" property, but not always. For example, in the above hypothetical—where Grandfather transferred Blackacre to Grandson reserving a life estate in himself with a successive life estate in Son—upon the death of Grandfather, Son receives a present possessory interest in Blackacre for his life and not the "whole" ownership of Blackacre. Son's present possessory interest attaches only to the life estate. Son cannot transfer the "whole" of Blackacre, nor, for that matter, any part of the remainder interest. Therefore, Son's inheritance tax liability would be determined upon the value of the life estate in Blackacre.

On the other hand, Grandson would also be liable for inheritance tax. Clearly, the *inter vivos* transfer was one intended to take effect after Grandfather's death (in fact, after Son's death). Grandfather is dead, and Grandson has a present possessory interest in his vested remainder. The value to which Grandson's present possessory interest attaches is the value of the remainder interest. That is, the value for inheritance tax purposes is the fair market value of the "whole" of Blackacre less the fair market value of Son's life estate.

## VI.

### "Class" of Transferee

The Legislature has categorized three classes of taxpayers in relation to the inheritance tax. These classes are defined under IC § 6–4.1–1–3 (Burns Code Ed.),[8] in pertinent part, as follows:

"(a) 'Class A transferee" means a transferee who is a surviving spouse, lineal ancestor, or lineal descendant of the transferor.

"(b) 'Class B transferee' means a transferee who is a:

"(1) Brother or sister of the transferor;

"(2) Descendant of a brother or sister of the transferor; or

"(3) Spouse, widow, or widower of a child of the transferor.

"(c) 'Class C transferee' means a transferee who is neither a Class A nor a Class B transferee."

The clear legislative intent is that a transferee's "class" is determined by the transferee's relation to the transferor-decedent.

The tax rates imposed under IC § 6–4.1–5–1 (Burns Code Ed.) are determined by the "particular" transferee's class. These tax rates favor Class A over Classes B and C, and Class B over Class C. For example, the first $25,000 of property is taxed at the following rates: Class A = 1%; Class B = 7%; and, Class C = 10%. Similarly, the marginal tax rate on property valued at $1,025,000 is as follows: Class A = 8%; Class B = 15%; and, Class C = 20%. The clear intent of the Legislature was to favor

---

Katherine's death. To say that Irma took through Wilbur, as though this were a title search, is irrelevant to the inheritance tax liability determination. Clearly, the only interest Wilbur received was a remainder interest which was an *inter vivos* transfer. Wilbur succeeded to no property rights from any deceased person on the "1942 transfer." There was no tax liability which accrued upon the "1942 transfer." The "1942 transfer" was merely a *type* of transfer which could result in an inheritance tax liability accruing *if certain other* conditions were met. No one would dispute the fact that if Wilbur had transferred his remainder interest back to his parents (Henry and Katherine) prior to his death that no inheri-

tance tax would have accrued "through" Wilbur or upon the "1942 transfer."

8. IC § 6–4.1–1–3(a) (Burns Supp. 1979) was amended in 1979 by the Legislature to exclude "surviving spouse" from Class A transferees. This amendment was in conjunction with the amendment of IC § 6–4.1–3–7 (Burns Supp. 1979) which now makes all property interest transfers from the decedent to his surviving spouse exempt from inheritance tax. Note, therefore, under the Majority's reasoning, since the property was deemed to "pass through" Wilbur, that after the 1979 amendments Irma would take the property completely exempt from inheritance taxes. This result would clearly violate the intent of the Legislature.

Class A over Class B and Class B over Class C transferees.

Likewise, the Legislature has favored Class A and Class B transferees in relation to allowable exemptions. Under IC § 6–4.-1–3–10 (Burns Code Ed.), a Class A transferee is allowed an exemption of $2,000. Under IC § 6–4.1–3–11 (Burns Code Ed.) a Class B transferee is allowed an exemption of $500. Under IC § 6–4.1–3–12 (Burns Code Ed.) a Class C transferee is allowed an exemption of $100. Clearly, the intent of the Legislature was to favor Class A over Class B, and Class B over Class C transferees.

Obviously, the intent of the Legislature was to favor certain relationships between the transferor and the transferee. Generally, the closer the relation—"closeness," as defined by the Legislature—the more favorable the tax rates and exemptions. Irma, being a widow of a child of the transferor, is a Class B transferee. Admittedly, if Wilbur had survived Katherine, Wilbur would have been a Class A transferee. Irma received the present possessory interest in the transferred property. Although not determinative of this issue, Irma also owned the "whole" of the transferred property upon Katherine's death. These combined facts establish that Wilbur's "Class" is not relevant to this issue. To determine this tax liability under Class A rates and exemptions is clearly in violation of legislative intent. The only relevant relation upon the death of Katherine was the relation of Irma to Katherine, a Class B relationship.

A simple hypothetical will further illustrate the error of the majority's decision. Assume that prior to his death, Wilbur gifted his property to a neighbor—clearly a Class C transferee. Upon Katherine's death, under the Majority's reasoning, the neighbor would be a Class A transferee. That is, the Majority would give the neighbor the favorable status of a spouse or a lineal descendant or ancestor because the property had to "pass through" Wilbur, a Class A transferee. Not only does this violate the clear intent of the Legislature, but it opens the door to the wholesale evasion of inheritance taxes in Indiana.

## VII.

### Application and Conclusion

Under the principles set out above, and disregarding the issue raised in *PART A*, the correct determination of the inheritance tax liability would be relatively simple. First, there was a transfer of the "ownership" of the property by Katherine intended to effect possession or enjoyment upon the death of Katherine. This was a *type* of transfer within the inheritance tax statutes. Second, Katherine did die. Third, upon the death of Katherine, the possession of the "present possessory interest" transferred from Katherine to Irma. Therefore, the inheritance tax liability accrued to Irma.

Since Irma received the present possessory interest, Irma is the "particular transferee" under the inheritance tax statutes. Thus, it is Irma who determines the "Class" of transferee. Since Irma is the widow of a child of the transferor, Irma is a Class B transferee. Therefore, Irma should get a Class B exemption [$500 under IC § 6–4.1–3–11] and be taxed under Class B rates [IC § 6–4.1–5–1(c)].

Finally, Irma's present possessory interest attached to the "whole" of the property. Therefore, the inheritance tax liability should be determined upon the value of the whole of the thirty-four acres.

I would remand this case to the trial court so that the issue raised in *PART A* would be properly resolved and the correct value—for inheritance tax purposes—of the property here involved be determined. Then, the "value" so determined should be taxed in accordance with the principles set out in *PART B*.